GRISWOLD, *Appellant*, v. SELIGMAN.

1.  **Corporation**: HOW LIABILITY AS STOCKHOLDER MAY BE ASSUMED. One may render himself liable as stockholder in a corporation as well by his conduct in respect to the stock of the corporation, as by formal subscription and acceptance of stock.

    **Case Adjudged.** Accordingly, where defendants advanced money to a corporation, and to secure the advances, received from the corporation a certificate for a majority of its capital stock, which was absolute and unconditional on its face, but was to be held by them "in trust" as declared by a resolution of the board of directors, or "in escrow," as it was expressed in an entry on the stock book of the corporation ; and while so holding the stock, defendants voted it at one election and thus elected the directors and other officers, and thereby obtained complete control of the corporation; *Held*, that they were estopped to deny that they were stockholders, and were liable as such, both to the corporation and its creditors; and this, so far as the creditors were concerned, whether they became such before defendants had so treated the stock or not.

    NORTON, J., dissenting, denied that there was any liability.

    HENRY, J., agreed that defendants were liable to creditors, but denied any liability to the corporation.

3.  **Parol Evidence to Modify Written Contract.** Where stock is held under a written contract, as security for advances, it is not

competent to show that there was a verbal understanding that the bailees were to have the privilege of voting the stock.

4.  **Corporation** : PLEDGE OF STOCK : PLEDGEE'S LIABILITY.   Section 9, p. 301, Wag. Stat., in relation to railroad companies, provides that "no person holding stock in any such company    *    *    as collateral security, shall be personally subject to any liability as a stockholder of such company; but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly."   *Held*, that this section has no application to stock which has not been issued in the usual course of business, and, therefore, does not exempt from liability a person holding as collateral security unsubscribed stock issued to him by the company. NORTON, J., dissenting.

5.  **Statutes Derived from other States.**   Where a statute of this State is derived from another state, a decision of the supreme court of that state construing it, rendered after its adoption here, does not carry with it that authoritative force that it would have had if it had been rendered before the adoption.

*Appeal from Jasper Court of Common Pleas.*—HON. E. O. BROWN, Judge.

REVERSED.

The facts are stated in the opinions.

*W. H. Phelps* for appellant.

One who holds and uses stock, and so gets the benefit of it, is liable to the creditors of the corporation, even though it be issued as collateral security, or in trust to secure a debt due the corporation.   *Wheelock v. Kost*, 77 Ill. 296; *Pullman v. Upton*, 96 U. S. 329; *National Bank v. Case*, 99 U. S. 628.   Respondents having voted the stock and enjoyed the privileges of stockholders, they should be held to a stockholder's liability as to creditors, although the stock was originally given to them as collateral security.   *Adderly v. Storm*, 6 Hill 624; *Rosevelt v. Brown* 11 N. Y. 149; *In re Empire City Bank*, 18 N. Y. 199; *Hale v. Walker*, 31 Iowa 344.

*John P. Ellis* also for the appellant.

1.   In order that a creditor of a corporation may hold one liable as a stockholder, who is not a subscriber, it is not essential that the creditor shall have become such by reason of the conduct of the other party or the facts relied upon as constituting an estoppel.  *Sanger v. Upton*, 91 U. S. 63; *National Bank v. Case*, 99 U. S. 631.

2.   Delivery of the stock to the defendants vested the title in them.  *Moss v. Riddle*, 5 Cranch 351; *Flay v. Maim*, 2 Sumner 510; *Henshaw v. Dutton*, 59 Mo. 139.  In order to be in escrow the delivery should have been to a stranger.

*H. H. Harding* and *Broadhead, Slayback & Hauessler* for respondent.

Our statutes make a clear distinction between mere stockholders and stock-owners.   The latter only are qualified to be directors; (Wag. Stat., 299, § 6,) while any stockholder may vote at elections, though he be not the absolute owner of the stock.   It is stock-owners only who can be made liable for the debts of the corporation.   Wag. Stat., 291, § 13; R. S., § 736.

Neither according to common law, nor under our statute, can a man become legally a stockholder, so as to enable him to participate in the management of the affairs of the corporation, merely by becoming the holder of a certificate of stock, even though the certificate may be transferred to him in writing by one who is a member of the corporation; it requires the consent of the corporation before an individual can become a member of it, and this generally must be done either by subscription to the stock of the corporation, or by transfer to him on the books of the company and with its consent by a person who is the owner of stock.   Both modes of becoming a member of the body corporate require the concurrence of the corporation.   In this case there is no transfer of ownership, either by an individual who had acquired the stock or by the corporation.   Defendants took the stock to hold as trustees

for the benefit of such persons as might advance money to the company. If because they accepted the certificate, they became owners of 60,000 shares of the stock, instead of getting security, they were contracting an immense liability. The fact that the certificate was absolute and unconditional on its face, does not estop them from showing that they did not hold it as owners; (*McMahon v. Macy*, 51 N. Y. 155; *Tonica & Pet. R. R. Co. v. Stein*, 21 Ill. 96; *Lathrop v. Kneeland*, 46 Barb. 432; *Jones v. Portsmouth R. R. Co.*, 32 N. H. 544;) especially since the evidence was in writing.

It is claimed that inasmuch as the stock certificate was absolute on its face, persons dealing with the corporation had the right to infer that the defendants held the stock absolutely. But it is not pretended that any one was deceived or misled by this fact; besides, the stock register or transfer book is the place to look for the purpose of finding out who are stockholders. The certificates of stock issued are no part of the records of the corporation; they belong among the private papers of the individuals holding them for any purpose, and are not open to public inspection, but the stock register is the place for persons dealing with the corporation to see who are members, (Thompson on Stockholders, § 177,) and when we come to look at the stock register in this case it shows that this stock was held in escrow by the defendants, not in their own right. But there is no rule, statutory or otherwise, requiring notice to be given to the world as to who is the owner of stock in a corporation, nor as to how the stock is held, and in the absence of any such rule, it must be a matter depending upon the contract between the corporation and the stockholder, as to who is the owner of stock.

It is claimed that the exemption from liability provided in the first clause of section 9, page 301, Wagner's Statutes, is limited to cases where there is some one to respond to liability under the second clause of the section. But the first clause of the section referred to is broad

enough to cover the case of the trustee, and the statute clearly means that no person is liable unless he holds the stock in his own right. Of course, if he holds it for any one, the person for whom he holds it, and who is the real owner, is and ought to be liable. *Matthews v. Albert*, 24 Md. 527; *Guest v. Worcester R. R. Co.*, 38 L. J. (C. P.) 23; Thompson on Stockholders, § 224; *McMahon v. Macy*, 51 N. Y. 155.

SHERWOOD. C. J.—This appeal questions the correct-ness of the ruling which denied plaintiff's motion for exe-cution against defendants. The point thus presented for determination is, whether the defendants are answerable as stockholders. The relation of stockholder may be created not only by the usual formalities of subscription and the acceptance of stock, but other acts are, in contemplation of law, the legal equivalent of those just mentioned. That is to say, con-duct on the part of the person sought to be charged is, of itself, sufficient to accomplish all that could be accomplished by the rigid observance of those formalities usually attend-ant on becoming a stockholder.

*1. CORPORATION: how liability as stockholder may be assumed.*

The law declaratory of this position is well settled in America and by the earlier authorities in England. Thomp. on Stock., § 150.

Thus, in action of debt for calls, one who, though not a subscriber had paid a call as such, was held estopped to deny his membership, and a like ruling was made in a sim-ilar instance, where the defendant had attended the half yearly meeting of the proprietors. *Railway Co. v. Graham*, 2 Eng. Ry. Cas. 870; *Railway Co. v. Gunstone*, 2 Eng. Ry. Cas. 870. So, also, where the issue raised, as in the cases cited, was, whether the defendant was the proprietor of shares and consequently liable for calls, and it appeared that he had represented himself to the company in that capacity, claiming to be registered as such in consequence of scrip certificates purchased by him and sent in to the

company, for which he had received receipts and a notice from the company that the scrip would be exchanged for sealed certificates on demand, he was held estopped to deny his liability for calls, though the provisions of the act necessary to make him proprietor had not been complied with by the registry of his name or the entry or any memorial of transfer, Lord Denman, C. J., remarking: "A party cannot, by his own conduct, change his liability at pleasure. * * All the machinery which the legislature renders necessary to constitute a member is in this instance dispensed with by the conduct of the parties." *Railway Co. v. Daniel*, 2 Eng. Ry. Cas. 728. And that case was held not distinguishable from one decided at the same time, where, in addition to the facts first noted, the defendant had paid calls on some shares and begged time as to others. *Railway Co. v. DeMedina*, 2 Eng. Ry. Cas. 735. In such cases it is held that a "valid and binding contract" is formed between the company and the person sought to be charged as contributory if there has been a course of dealing with the company wherein they have permitted the alleged transferee to become a shareholder *de facto*. *Straffon's Extrs. Case*, 1 DeG., Mac. & G. 576, and cases cited. The beneficial use of stock will also render the person so using it liable as shareholder. This is well illustrated in *Maguire's case*, 3 DeG. & Smale 31, where the son, unaware that two shares had been transferred him by his father, signed certificates obtained from the company's office as proprietor, and on several occasions by this means secured a free passage in the vessels of the company, was held properly placed on the list as contributory, the vice-chancellor saying: "This gentleman is shown so plainly and distinctly to have represented himself and to have acted as proprietor, that in my opinion it is established that he is a proprietor, and if a proprietor, a partner and a contributory.

In this country instances are abundant where parties sued as shareholders at the instance of the corporation or of creditors, have been held either estopped by their con-

duct from denying their liability, or that their conduct was cogent evidence of such liability. Thus, where a party who, though released from the obligation of his subscription, had subsequently voted at the annual meeting for directors, was himself elected as a director, acted in that capacity and as a stockholder, and paid money to the company, although no call was made therefor, it was held in an action for calls that these acts very strongly warranted the presumption that he had resumed his original obligation as a stockholder. *Railroad Co. v. Stewart*, 41 Pa. St. 54. Upon analogous grounds, one who had been voted a member of a New England parish, had in that capacity attended and voted at parish meetings and acted at trustee of the parish funds, was held a member, and that his body could be taken in execution for a parish debt, though he had not, in compliance with statutory requisition, filed any certificate of membership. *Chase v. Bank*, 19 Pick. 584. And the enunciation of a similar doctrine is made by the supreme court of the United States when declaring that: "An implied promise is proved by circumstantial evidence; by proof of circumstances that show the party intended to assume an obligation. A party may assume an obligation by putting himself in a position which requires the performance of duties." *Webster v. Upton*, 91 U. S. 65. The same court say, in *Upton v. Tribilcock*, 91 U. S. 45 : "The acceptance and holding of shares in a corporation make the holder liable to the responsibility of a shareholder. * * A promise to take shares of stock imports a promise to pay for them. The same effect results from an acceptance and holding of a certificate." And where a corporation had accepted parties as legal stockholders, entered their names on the stock books as such, and given them all the privileges of stockholders, it was held that they must be taken to be stockholders for the purpose of liabilities as well as sharing in the profits to be divided among the members. *Bank v. Goodman, etc.*, 9 Cush. 576.

In *Sanger v. Upton*, 91 U. S. 56, an action by an as-

signee of a bankrupt corporation, where stock certificates were issued in blank to the defendant, and she paid upon the stock twenty per cent of its par value at the time, and a like amount subsequently, and received a dividend from the company, and the stock stood in her name upon the books of the company, she was held liable, Mr. Justice Swayne remarking: " The only question was, whether she owned the stock. No one else claimed it. The certificates were issued and delivered to her. They belonged to her. They were the muniment of her title. She could have filled the blanks with her name whenever she thought proper.    *    *    She was estopped from denying her ownership. She could not assert her title if there was a profit and deny it if there was a loss." It is very noteworthy in that case there was no evidence tending to show that defendant "ever subscribed for said certificates of stock, or for any stock of said company, *or that her name appeared on any list of stockholders circulated by said company.*" There is no public register of stockholders provided for in Illinois, where that case arose. 3 Dillon 505. Nor was there any evidence to show that any creditor of the company became such subsequently to defendant's purchase of stock, or in consequence thereof, or in short, altered his condition by giving credit to the company on the faith of defendant's being a stockholder. So that case, as well as that of *Carver v. Upton*, 91 U. S. 64, the record of which I have examined, and which was decided upon facts substantially similar, manifestly proceed upon these grounds, and can, in reason, proceed upon no other, that the time at which a person becomes a stockholder is not considered material, and that whenever a party, in consequence of his course of conduct, by his acts and representations, is to be deemed a stockholder as toward the company—is estopped by that conduct from denying his liability as to the company—he is likewise and for the self-same reasons precluded from denying his liability as to creditors. For whenever a person " has been treated as a shareholder by the company, and

has acted as a shareholder, both he and the company will be estopped from denying that he is a shareholder." 1 Lindley on Partnership, 129. "If a person is a member of a company as between himself and the company, then, whether he is so by reason of his having become a member by complying with all requisite formalities, or by reason of the doctrine of estoppel, he ought, upon principle, to be deemed a member to all intents and purposes." Ib., 129. And it would be anomalous, indeed, to hold that such a relationship by estoppel could exist as between a person and a corporation and yet have no existence as to creditors. Ib., 130.

I have been able to find but one case, *Vice v. Anson*, 1 Man. & Ry. 113, where a creditor suing an individual not a stockholder *de jure*, for a corporation debt, has been denied recovery unless able to establish that the debt was contracted on the personal credit of the particular person sought to be charged. Mr. Thompson in his recent work treated this case as an exceptional one, and says it has frequently been "distinguished" by the English judges in subsequent cases. Thomp. on Stock., § 175. This statement finds confirmation elsewhere. *Owen v. Van Ulster*, 10 C. B. 318; 1 Lindley on Part., pp. 95 and 149, and cases cited.

In *Davidson's case*, 3 DeG. & Smale 21, as a mere matter of accommodation he was induced to sign for 100 shares, on the express understanding, a memorandum of which was entered in the company's books, that he was to receive nothing and incur no liability in respect of the shares. Under this agreement he disposed of thirty shares, the purchase money of which was paid to the directors, and afterward transferred the remaining shares to the manager. He never received or paid anything in respect of the shares, nor did it appear that any one was prejudiced by his conduct, and yet he was held a contributory, Vice-Chancellor Bruce saying: "It has not been proved or alleged that strangers did not, and I think it reasonable to assume that

strangers did become shareholders after the transaction." We have in this State no public registry of stockholders, as in England and in some of our sister states. The public has no access to the book in which is registered the transfer of shares of stock, or to any other book containing the names of the stockholders, those books being accessible to stockholders alone. 1 Wag. Stat., 299, § 6, subdiv. 8. Consequently it must be very obvious that instances of holding one's self out to the world as a stockholder, and so becoming chargeable can rarely occur here. This view finds support in the reflection that under the terms of our statute no one is liable as a stockholder unless occupying that relation at the time of the issuance of execution. *McClaren v. Franciscus*, 43 Mo. 452. So that, if by some fortuitous circumstance a creditor should ascertain that a particular person was a stockholder and give credit to the corporation on the faith of such person being then a stockholder, it must be upon the faith also that such person would continue to be a stockholder down to the issuance of execution, a supposition which cannot, with any great show of reason, be indulged.

In the present instance the defendants were appointed the financial agents of the company; they were large holders of its bonds; their names were entered on its books as stockholders; they held, and still retain, an absolute and unconditional certificate for 60,000 shares of the stock, which was a majority of the authorized stock; they voted that stock at one annual election, thereby electing the directors and other officers of the company, thereby obtaining entire management and control of its affairs. If after the course of conduct pursued by them, defendants can, in the face of the fact of voting as stockholders, now successfully assert their non-liability as such, it must be confessed that the doctrine of stockholdership by reason of implied contract and by reason of estoppel as announced in the foregoing authorities, is shorn of whatever vigor it heretofore has been thought to possess. To

deny in such circumstances defendants' liability would be to declare the unpalatable doctrine, a doctrine peculiarly unpalatable in American courts, that a person may play fast and loose; may enjoy all the benefits and emoluments of stockholdership without shouldering a tithe of its usually inseparable burdens; may accomplish by an indirection what could not be accomplished directly; may, in a word, be a stockholder to *vote* but not a stockholder to *pay.* The bare statement of such a doctrine condemns it, and its perniciously unjust results justify the condemnation.

But it is claimed that this case is exempted from the operation of the principles enunciated by the cases cited, and the defendants from the liability which otherwise had been incurred, by reason, first, of the contract entered into between defendants and the corporation, and by reason, second, of this statutory provision : "Section 9. No person holding stock in any such company as executor, administrator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as a stockholder of such company ; but the person pledging such stock shall be considered as holding the same and shall be liable as a stockholder accordingly, and the estates and funds in the hands of such executor, administrator, guardian or trustee, shall be liable in like manner and to the same extent as the testator or intestate, or the ward or person interested in such fund would have been if he had been living and competent to act and held the stock in his own name." Wag. Stat., p. 301.

Relative to the contract in question, it is clear that parol evidence of contemporaneous "agreements and understandings" is as plainly inadmissible here as it would be in any other instance whatsoever. Thomp. on Stock., § 121, and cases cited. Hence, parol evidence that "it was understood that defendants were to have the privilege of voting the stock" is altogether incompetent to effect the purpose for which offered, *i. e.*,

3. PAROL EVIDENCE TO MODIFY WRITTEN CONTRACT.

to add to or vary the written contract of the parties. For this reason the act of voting the stock must be regarded as one not done in the exercise of any contract right; but as a totally independent act—an act certainly not referable in any manner to the contract relied on ; since that provided for the company to deposit with defendants a majority of the capital stock authorized to be issued, said stock to remain in the control of defendants for one year at least, and the resolution of the directors merely provided that certificates for a majority of the capital stock be issued to defendants to hold in trust for the period of twelve months. The attempt must, therefore, prove futile to derive any authority to vote the stock from the stipulations of the contract.

Nor is the opinion entertained that the contract brings defendants within the purview of the above quoted section 4. CORPORATION: of the statute ; for the very terms of the sec-
pledge of stock:
pledgee's liability tion suppose that stock has been issued in usual course, and then in consequence of either the death of the original stockholder, or the coverture or minority of the person beneficially interested, there is no one *in esse* who should be made "personally subject" to liability as a stockholder, and for this reason it is that the " estates and funds " in the hands of the fiduciary named, are made liable " in like manner and to the same extent," as if death had not occurred in the one case, or coverture or minority existed in the other.

The only other exception the section makes is where the stock is held as " collateral security," but there, while the pledgee is expressly exempted from liability as a stockholder, the pledgeor is expressly held liable as occupying that relation. The section, in short, is one of exceptions ; one declaratory of non-liability in certain specified instances, leaving the question of liability in all other cases to be determined as if no such section existed ; and this, upon the familiar grounds that the expression of one thing is the exclusion of another, and that statutory exceptions are to

be strictly construed. *Richardson v. Harrison*, 36 Mo. 96, and cases cited. The evident purpose and policy, the fundamental idea of the section being discussed, as well as others *in pari materia*, both constitutional and statutory, require that the creditors of the corporation should be abundantly secured against loss; and this end was sought to be accomplished by providing that some person or estate should always be ready to respond to the demands of creditors. It seems too plain for discussion that any other construction would defeat the legislative purpose. If these views be correct, if the statute only exempts those classes of persons which it expressly designates, the defendants falling in neither of such classes, not being executors or administrators of some deceased stockholder, nor guardians or trustees of some one laboring under the previously mentioned disabilities, it can only follow that the case stands here for determination, as before stated, as if the section under consideration did not exist. Here there was no pledgeor, and, consequently, could be no pledgee within the meaning of the statute, since it is little less than absurd to say that a corporation could be its own stockholder. *American Ry. Frog Co. v. Haren*, 101 Mass. 398; *Dayton & Cin. R. R. Co. v. Hatch*, 1 Disney 84; *Ex Parte Holmes*, 5 Cow. 426; *Brewster v. Hartley*, 37 Cal. 15; *State ex rel. Page v. Smith*, 48 Vt. 266.

Section 5152, United States Revised Statutes, is virtually identical with the section just discussed. Britton, president of a National bank, bought stock with the bank's funds and held it registered on the books as held by "Britton, trustee for the bank." Judge Dillon, in *Johnson v. Laflin* 5 Dill. 65; *s. c.*, 6 Cent. Law Jour. 124, had under consideration section 5152, *supra*, in reference to the facts just stated, and held that "Britton is responsible personally, inasmuch as he had no authority to act for the bank, and as there is no *cestui que trust* who is liable," and the learned judge further held on that occasion, that "in the eye of the law the transfer to Britton as trustee, is a transfer to

him individually," and that "if it becomes necessary to assess the stockholders, he will be estopped to say that he is not individually responsible, since he was not acting by authority of any *cestui que trust* capable of taking and holding the shares. A similar ruling was made on the same section in *Wheelock v. Kost*, 77 Ill. 296, a proceeding by creditors, where a party loaned money to a National bank for the benefit of that corporation and received as collateral security the bank's certificates of stock issued in pledge. Afterward he received semi-annual dividends thereon, and it was held that he was liable as a stockholder, Mr. Justice Scott remarking: "Whatever relation appellant may have sustained to the corporation of the bank, it seems clear that as to the creditors he occupied the position of stockholder, and must bear all the burdens that relation imposed. The stock had, in fact, been transferred to him. It stood in his name as owner, and he availed himself of the dividends it earned. Having voluntarily assumed the relation of stockholder, it makes no difference whether he may have done it to assist the bank in its credit or otherwise." This decision met with approval in *Pullman v. Upton*, 96 U. S. 328.

A different view appears to have been taken in Maryland of section 9, *supra*, (*Matthews v. Albert*, 24 Md. 527,) 5. STATUTES DE- whose provisions seem to have been copied
RIVED FROM OTH-
ER STATES. from the statutes of that state. The decision, however, having been made subsequently to our adoption of the section, does not carry with it that authoritative force that otherwise it would have done had its adoption occurred subsequently to that decision, and at all events the decision on the particular point is a mere arbitrary declaration of a conclusion, unaccompanied by any reasons in its support, and is, therefore, entitled to but slight consideration. But a very pregnant circumstance in this connection should not be overlooked; a circumstance that distinguishes this case very widely from the Maryland case, and that is, that the party sought to be charged there had

not in any manner estopped himself by receiving dividends or otherwise acting as shareholder.

The case of *McMahon v. Macy*, 51 N. Y. 155, to which citation has been made, also differs from this, because in that case there was a responsible pledgeor, an absolute owner, answerable to the demands of creditors. The authorities cited by the court in that instance as showing parol evidence admissible to establish that stock was held as " collateral security " show nothing of the sort; they only annunciate the current doctrine that in equitable proceedings to redeem and the like, it is competent to show that a conveyance absolute on its face, was only intended as a security for a debt; a ruling always put upon distinct equitable grounds, (*O'Neill v. Capelle*, 62 Mo. 202, and cases cited,) and was never intended to overthrow the salutary and fundamental rule which pointedly inhibits the introduction of parol evidence to vary or control a written contract.

Granting, however, for the moment, such evidence to be admissible in this instance, how stands the case with the defendants ? Their theory is that they never owned the stock ; that it belonged to the corporation, that they held it merely " in trust," "in escrow " as " collateral security." But what becomes of that theory when we advert to the statutory prohibition, (sub-div. 5, § 6, Wag. Stat., 300,) that " no person shall be admitted to vote on any shares belonging or hypothecated to the corporation." Is it not manifest that their former conduct in this regard and their present theory utterly fail to correspond? This is a case where " acts speak louder than words;" where plausible theories go for nothing, when confronted by palpable facts. We cannot impute to defendants either ignorance of or a desire to violate the law, and so must conclude that they by the act of voting the stock represented themselves to the corporation, and were by the corporation regarded as fully entitled to the privileges they claimed and exercised. This being the case they certainly cannot be

heard to gainsay their heretofore admitted title; to assert that "title, if there was a profit, and deny it if there was a loss." *Sawyer v. Upton, supra.* They are plainly estopped as toward the corporation, and if toward the corporation then this estoppel will inure to the benefit of the creditors of the corporation, who, in this proceeding, are subrogated to all its rights.

Again, it is well settled in this country that the capital stock of a corporation is a trust fund for the payment of all its debts, and that the directors are trustees of such fund. This fund is jealously watched by the courts, and they have sedulously defeated all devices whereby the directors have issued to themselves "paid-up stock;" all colorable transactions whereby stock has been taken in the name of a fictitious person or of a *femme covert*, or of an infant, (Thomp. on Stock., §§ 129, 182, 183, and cases cited,) and we see not why the same principle which forbids or thwarts all transactions of that nature should not step in and assert itself in the case at bar. The mischievous consequences are assuredly as great here as in the cases instanced, and the measure of relief afforded should be equally efficacious. For if it be an abuse of the trust fund for the trustees of a corporation to issue as paid-up stock, stock not paid-up, we are at a loss to discover why a like rule should not apply here, and why stock issued for the purpose of allowing defendants to acquire control of a corporation, as they themselves have testified, should not be charged against them as stock regularly issued, and they held accountable accordingly.

As the result of these views, we reverse the judgment and remand the cause. Judges NAPTON and HOUGH concur. Judge HENRY concurs in the result. Judge NORTON dissents.

HENRY, J.—I concur in the result, but do not agree that the facts would have rendered the defendants liable as stockholders to the railroad corporation.

NORTON, J., DISSENTING.—Plaintiff, who is a judgment creditor of the Memphis, Carthage & Northwestern Railroad Company, and obtained execution on his judgment which was returned *nulla bona*, is in this proceeding seeking to make the defendants, Seligmans, liable as stockholders in said company under section 736, Revised Statutes 1879, which is as follows : " If any execution shall have been issued against any corporation and there cannot be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock."

I think it clear that before an execution can issue under the above section against a stockholder, it must be shown that the stockholder proceeded against is the owner of stock on which there is an unpaid balance. Ownership of stock may be acquired either by subscription of a person on the stock books and the issue of stock to him, as the charter may provide, or by transfer on the books of the company, with its consent, by one person, the owner of stock, to another.

The evidence shows that the Seligmans, who are sought to be charged in this proceeding as the owners of 60,000 shares of unpaid-up stock, never subscribed for said stock on the books of the company, and that said shares were never transferred to them by another person, the owner thereof, on the books of the company and with its consent. It does show that the stock in question was issued to the Seligmans, not in virtue of any subscription made by them or any transfer made to them, but in virtue of a contract between the corporation and the Seligmans in 1872, under which defendants agreed as financial agents of the company to make certain advances of money to the company to enable it to complete its road, and in consideration of the advances made and to be made the company agreed to execute and deposit with the Seligmans its entire issue of

first-mortgage bonds, and to deposit with them a majority of the capital stock authorized to be issued, the stock to remain in the control of the Seligmans for one year. It appears that in pursuance of this contract, on the 22nd day of May, 1872, the board of directors of the company passed a resolution as follows : " That in making negotiations for money with J. & W. Seligman & Co., certificates of a majority of stock be issued to J. & W. Seligman & Co. to hold in trust for the period of twelve months, and that such certificates be signed by the president and secretary with the corporate seal of the company affixed." On the books of the company also appears the following entry : "J. & W. Seligman; residence New York : shares 60,000, (held in escrow ;) amount of dollars, $6,000,000. May 20th, 1872." This evidence, while it fails to establish that Seligmans were the owners of such stock, does, on the contrary, establish the fact that they were not the owners but simply the custodians of it as trustees. This the contract, the resolution of the board of directors and the entry on the stock books, all indicate and nothing more, and by no process of reasoning known to me, can an inference even be drawn from these facts that it was the purpose of either the Seligmans or the company to fasten upon the Seligmans a liability to the company for $6,000,000, when it is apparent that the object of the transaction between the parties was to secure through the Seligmans advancements of money to complete the road, for which they were to be made secure by the deposit with them of first-mortgage bonds and a majority of the capital stock.

That the legislature did not intend by the section quoted above, and which gives origin to the proceeding, to make a mere holder of stock who was not the owner liable, is manifested by section 771, Revised Statutes 1879, which declares that " no person holding stock in any such company, as executor, administrator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as stockholder

of such company; but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly; and the estates and funds in the hands of such executor, administrator, guardian or trustee, shall be liable in like manner, and to the same extent as the testator or intestate, or the ward or person interested in such fund would have been if he had been living and competent to act, and held the same stock in his own name." This section clearly exempts from liability all persons holding stock in a fiduciary capacity. The exemption is absolute, and is not dependent on the fact that there is no *cestui que trust* to answer the liability under the last clause of the section. A section of the statute of Maryland, of which section 771, *supra*, of our statutes is a literal copy, has been construed in the case of *Matthews v. Albert*, 24 Md. 527, and the construction therein given sustains the view above expressed. In that case the corporation itself issued the stock as collateral security, and the holder of the stock was sought to be made liable, and it was held that by virtue of said section he was exempt from liability. The stock in that case had been deposited with one Tiernan, who had loaned the company $2,000, as collateral security for the loan, and it was contended that the statute did not apply to a case when the company itself pledged the stock, but the court held otherwise, and observed : " That in our opinion his (Tiernan's) claim was for money loaned and the stock transferred to him was held as collateral security for his loan, and so holding it he is not personally subject to any liability as stockholder, but is protected by the provisions of the act of 1852, chapter 338."

It appears from the evidence that the Seligmans voted the stock held by them at one or more elections for directors, and it is claimed that having so acted they are estopped both as to the company and its creditors from disputing the fact that they were the owners of the stock. I think that the doctrine of estoppel does not apply in this case.

To create an estoppel *in pais* something more is required than the mere assertion (if voting the stock was an assertion by Seligmans) that they were the owners of the stock. To establish an estoppel *in pais*, it must usually appear, first, that one party has made an admission or assertion inconsistent with the evidence proposed to be given, or the claim offered to be set up ; second, that the other party has acted upon such admission or assertion ; and third, that such other party would be injured by allowing such admission or assertion to be disproved. *Taylor v. Zepp*, 14 Mo. 482 ; *Newman v. Hook*, 37 Mo. 207. The doctrine of estoppel cannot be invoked by the company, because the evidence shows that the Seligmans, in voting this stock, did so with the consent of the company and with full knowledge on its part that they were not in fact stockholders or owners of the stock, and it does not show that in consequence of said act of Seligmans the company took any action which altered its condition. Nor can the doctrine be invoked in this suit in favor of the creditor prosecuting it because it does not appear that the debt of the company upon which his judgment was obtained, was contracted on the faith of said act or even subsequent to the voting of the stock by Seligmans. For these reasons I do not concur in the opinion rendered.