JOHN J. STANLEY et ux., Respondents, v. W. H. VERITY, Assignee, et al., Appellants.

Kansas City Court of Appeals, April 6, 1903.

1. **Building and Loan Associations: INSOLVENCY: STOCK PAYMENTS: LOAN.** A member of an insolvent building and loan association has no right to have his payments on stock credited on his loan.

2. ———: MEMBERSHIP: FRAUD: EVIDENCE. *Held*, on the undisputed evidence, that no fraud was practiced upon the plaintiff to induce him to become a member and stockholder in a building and loan association, and he can not after several years deny such membership.

3. ———: ———: ———: USURY. In Missouri it is not a fraud on the usury laws for a building and loan association to exceed, by way of premiums, dues and fines, a greater per cent than is authorized by the interest laws, since the statute exempts such associations from the payment and penalties of the usury statute. (Cases considered and distinguished.)

Appeal from Mercer Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED.

*Morton Jourdan* and *Conklin & Rea* for appellants.

(1) When the loan association has become insolvent, payments on stock can not be applied as credits on a loan. The borrower must repay his loan and should present his claim for stock payments to be allowed in due course against the insolvent estate. Brown v. Archer, 62 Mo. App. 277; Price v. Loan Ass'n, 75 Mo. App. 551; Clark v. Lopp, 80 Mo. App. 542; State ex rel. v. Loan Ass'n, 80 Mo. App. 585; Woerhide v. Johnston, 81 Mo. App. 200; Clark v. Loan Ass'n, 85 Mo. App. 397; Hohenshell v. Loan Ass'n, 140 Mo. 578. (2) Under the supplemental agreement the plaintiffs are estopped from denying that they are in reality stockholders or from going back of that settlement. State ex rel. v. Stockton, 85 Mo. App. 477; Cover v. Loan Ass'n, 93 Mo. App. 302. (3) Plaintiffs were guilty of laches. For eight years they paid stock dues. Equity and good conscience will not excuse their tardy disavowal. Murdock v. Lewis, 26 Mo. App. 234; Erskine v. Loewenstein, 82 Mo. 301; Building As'n v. Vogeler, 7 N. P. Ohio 605; Phelps v. Loan Ass'n, 80 N. W. Mich. 120. (4) Plaintiff's understanding that he was to participate in the profits, and his payments for eight years under such understanding, conclusively bound him as a stockholder. Griswold v. Seligman, 72 Mo. 110; Fisher v. Seligman, 75 Mo. 14; Sanger v. Upton, 91 U. S. 56; 1 Lindley on Partnership, 129; 1 Beach on Private Corporations, p. 135, sec. 67; Railroad v. Daniel, 2 Q. B. 281; Bank v. Bartlett, 71 Ga. 797; 1 Beach on Private Corp., p. 137, sec. 67.

*Platt Hubbell, George Hubbell* and *Martin Read* for respondent.

(1)    This association had a legal right to make straight loans—that is, loans to others than stockholders.    R. S. 1889, sec. 2811; Saving Co. v. McCabe, 75 Mo. App. 555.    (2) In the absence of anything to the contrary, it will be presumed "that the court, or chancellor, placed his finding and judgment on the correct ground."    Sebree v. Patterson, 92 Mo. 459.    (3) That the case of Building & Loan Ass'n v. Thompson, 58 S. W. 202, correctly states the law of this case is proved by the following authorities.    Bishop on Contracts, secs. 471, 472, 473, 474; Fidelity Sav. v. Shea, 55 Pac. 1022; People's B. & L. v. Keller, 50 S. W. 183; Peightal v. Cotton States B. & L., 61 S. W. 431; Tolman v. U. C. & S., 90 Mo. App. 274; Kleimeir v. B. & L., 70 S. W. (Ky.) 42; Bell v. Mulholland, 90 Mo. App. 620; 15 Am. and Eng. Ency. of Law (2 Ed.), 1015; Landis v. McDonald, 88 Mo. App. 344; Interstate B. & L. v. Crawford, 63 S. W. 1072; Am. B. & L. v. Daugherty, 66 S. W. 131; Walter v. Mutual, 68 S. W. 536.    (4) The legal doctrine announced in the Southern Home case, 58 S. W. 202, and invoked by the respondent is the doctrine promulgated by our Supreme Court in Kenrick v. Cole, 61 Mo. 572; Schmuckers Estate v. Reel, 61 Mo. 603.

ELLISON, J.—This is a bill in equity whereby plaintiff seeks an accounting with defendant and, after paying what is found to be due from him, to cancel a note and deed of trust securing the same.    The defendant appealed from the decree of the trial court.

It appears that the Missouri Guarantee Savings and Building Association, existing under the building and loan statute, became insolvent and that defendant became the assignee thereof.    That some years prior to the insolvency, viz., in 1893, plaintiff became a member of said association and borrowed $700 of it.    That he took a certificate of stock as a stockholder and assigned it to the association as security for the loan, and also

gave his note for the amount of the loan and deed of trust aforesaid, as additional security. The provisions of the loan contract were that plaintiff should make monthly payments as interest and payments on stock, and that he paid these monthly for more than three years and until after the association became insolvent. It is conceded that the loan was made without competitive bids and that under the statute at that time, it was thereby rendered usurious. The only controversy between the parties is whether the monthly payments made by plaintiff as payments on stock are to be credited on the loan. The trial court held with plaintiff that they should be.

We decided in Brown v. Archer, 62 Mo. App. 277, that when a borrowing stockholder comes to settle with his insolvent association he has no right to have his payments on stock credited on his loan, since that would give him an inequitable and unjust advantage over the non-borrowing stockholder. We so decided again in Price v. Loan Ass'n, 75 Mo. App. 551. And the same was held by the St. Louis Court of Appeals in Clark v. Lopp, 80 Mo. App. 542.

But plaintiff's position in the trial court, and here, is that plaintiff was never a stockholder. That he did not understand that he had subscribed for the stock or had become a stockholder. He charges in his petition that the transaction was, in truth and in fact, only a loan of $700 to be paid in monthly installments, and that the defendant corporation fraudulently induced him to execute some fictitious instruments of writing, showing him to be a stockholder and subscriber for stock, which he has since learned was a scheme and artifice in attempted evasion of the usury laws of the State, and a fraud in law and equity.

There is not only no evidence whatever to sustain this charge, but the testimony of plaintiff, given in his own behalf, affirmatively shows the contrary. He does not pretend that any fraud or device was brought into

play to induce him to sign the papers which made him a subscriber for stock.   He does say that he only wanted to borrow money and did not intend to become a member of the association; and that "there was no claim that I was to be held as a stockholder." But he further stated that the company told him that his rate of payments would pay off the debt in a hundred months and "if the company was successful, much sooner than the hundred months." He further stated that he expected if the general loans of the company proved to be good and everything went smoothly, that the profits would pay his debt sooner; and that he "expected that the profits the company might receive from other borrowers would help to pay out his loan." It was shown by plaintiff's passbook that he made monthly payments on stock for four years, when he went into what is called a supplemental agreement with the association, in which his being a stockholder is recited. That thereafter he made payments as a stockholder.   In short, the undisputed evidence is absolutely conclusive that there was no fraud practiced upon plaintiff and that he knowingly became and knowingly continued to be a member and stockholder of the association for a period of several years and he can not, at this late day, be permitted to deny it.   Griswold v. Seligman, 72 Mo. 110; Fisher v. Seligman, 75 Mo. 14; Sanger v. Upton, 91 U. S. 56; Bank v. Bartlett, 71 Ga. 797.

2.   There is, however, included in plaintiff's petition a charge that though plaintiff did in fact become a stockholder in the association, the contract of membership and stock subscription whereby he became such member and stockholder was a fraud on the usury law of the State and a scheme devised for the purpose of evading such law.   We are cited to cases in other States deciding that in order to defeat illegal exactions of interest, under whatever name it may be called, and though the borrower become a member and stockholder, it could be shown that he became such member and

stockholder in order that he might get the money of the borrower at an illegal rate in evasion of the usury law. Fidelity Sav. Bank v. Shea, 55 Pac. (Idaho) 1022; People's B. & L. v. Keller, 50 S. W. (Texas) 183; Peightal v. Cotton States B. & L., 61 S. W. (Texas) 431; Southern Home B. & L. v. Thompson, 58 S. W. (Texas) 203.

Those cases are from States which have not specifically granted immunity from usury laws to such associations. A like holding has been announced in States where such exemption from usury laws has been made; but the ruling is based on the invalidity of the statute granting the exemption as being in conflict with the peculiar provisions of the Constitution of such States. Henderson B. & L. v. Johnson, 88 Ky. 191; Citizens' Security Co. v. Uhler, 48 Md. 455. The cases first cited and others of similar import are not applicable in this State, since our statute specifically exempts building and loan associations from the usury law (section 2814, Revised Statutes 1889, section 1364, Revised Statutes 1899), and those last cited are not applicable, since our statute has never been said to be in conflict with the Constitution of this State.

Therefore, since our statute itself exempts building and loan contracts with members from the operation and penalties of the usury law, it is manifest that there can, ordinarily, be no such thing as a contract with such company made to evade that law.

Building and loan associations are authorized by statute in most of the States. They are permitted to contract for monthly interest; for monthly payments on stock; for fines and for premium for the privilege of the loan. The interest, premium, etc., most frequently exceeds the lawful rate of interest in ordinary contracts, and though not specifically exempted from the usury law, the great weight of authority refuses to apply that law to them on the general ground that such associations are composed of a mutual membership and when properly conducted are very profitable to the

stockholders. Each member, especially each borrowing member, is interested in the profits and successful operation of the company, since such success redounds to his benefit and aids in the liquidation of his debt. The premium and interest he pays really goes to make up a fund of which he is a part owner and the benefit of which he, at last, receives in reduction, if not full payment, of the sum borrowed. There are, however, some courts which refused to allow such exemption and when the interest, premium, etc., amounted to more than the ordinary lawful rate of interest they have declared the contract usurious. Meroney v. Loan Ass'n, 116 N. C. 882, and cases cited. It thus was made to appear that in the absence of specific statutory exemption, the policy of each State, though legislative in its nature, would depend upon the view which the courts of that State might adopt. In this situation, some of the States, among them Missouri, adopted a statute, like that above cited, which specifically exempts such associations from the usury statute. It is thus seen that the authorities cited from States which have not an exempting statute like ours, are not applicable to a case arising under our law. It follows that the decree was erroneous. It will be reversed and the cause remanded. All concur.