**Opal L. GUM, Respondent,**

v.

**ST. JOSEPH FOODS, INC., Appellant.**

No. 25995.

Missouri Court of Appeals,
Kansas City District.

May 7, 1973.

Brown, Douglas & Brown, by Wendell E. Koerner, Jr., St. Joseph, for appellant.

Strop, Watkins, Roberts & Hale, by Dan Hale, St. Joseph, for respondent.

Before DIXON, C. J., and SWOFFORD, and WASSERSTROM, JJ.

DIXON, Chief Judge.

Defendant, St. Joseph Foods, Inc., appeals from a judgment of $3,052.52 in a court-tried case in favor of plaintiff, Opal Gum.

From the pleadings, fragments of evidence offered by plaintiff and a stipulation of the parties, the following facts emerge.

Plaintiff is the widow of Adrian J. Gum who was an employee of the defendant. In 1963, Adrian J. Gum orally contracted to subscribe to 2,500 shares of defendant corporation for a price of $5,000. One thousand dollars was paid in cash, and fifty dollars per month was to be deducted from his salary and applied to the $4,000 balance on the subscription agreement. At the time of his death in March, 1966, Gum had made payments of $1,800 by monthly

payroll deduction. The balance claimed to be due on the subscription agreement is $2,200. The 2,500 shares of stock, according to the stipulation, were "issued" by a certificate, No. 540, which was in the names of "Adrian J. Gum and Opal L. Gum, husband and wife, as tenants by the entirety."

Thereafter, another certificate was issued in the same names for 250 shares which represented a "stock dividend." The 2,750 shares are, on the basis of a complete liquidation which has been accomplished, worth $3,052.50. The company tendered $852.50 which would be due if the $2,200 payable on the stock subscription were offset. The court gave judgment for $3,052.-50, thus holding that the amount due on the stock subscription could not be offset against the liquidated value of the stock.

The trial court thus responded to the parties' statement in the stipulation that the controlling issue was the right of defendant to offset the unpaid subscription.

Neither party questions in any wise either the validity of the issuance of the stock or the partially performed oral subscription agreement. On this appeal, both plaintiff and defendant rely on Section 351.275 RSMo 1969, V.A.M.S., taking variant positions as to the meaning of the statute. That section is as follows:

"1. A holder of or subscriber to shares of a corporation shall be under no obligation to the corporation or its creditors with respect to such shares other than the obligation to pay to the corporation the full consideration for which said shares were issued or to be issued. Any person becoming an assignee or transferee of shares or of a subscription for shares in good faith and without knowledge or notice that the full consideration therefor has not been paid shall not be personally liable to the corporation or its creditors for any unpaid portion of such consideration.

"2. No person holding shares as executor, administrator, conservator, guardian, trustee, assignee for the benefit of creditors, or receiver shall be personally liable as a shareholder, but the estate and funds in the hands of said executor, administrator, conservator, guardian, trustee, assignee, or receiver shall be so liable. No pledgee or other holder of shares as collateral security shall be personally liable as a shareholder."

Plaintiff's position as expressed in her brief here is "a fair interpretation of the first sentence of this statute seems to mean that a holder or subscriber to shares would have to pay for them *if the holder or subscriber had agreed to do so.*" Defendant, on the other hand, argues that "Nothing more than *accepting* and *holding* shares is necessary in order to cause a shareholder to become liable to the corporation to pay for the shares."

The statute in question has not received judicial contruction either in Missouri or in Illinois from whose statutes it is derived.

█  Plaintiff's statement of the meaning of the statute engrafts upon the statute a requirement that there be an explicit agreement to pay on the part of the person who holds the shares. This improperly narrows the statutory language "obligation to pay." The "obligation to pay" has been found where no explicit agreement to pay by the shareholder existed. Griswold v. Seligman, 72 Mo. 110 (1880), holds that one who was a holder of stock under an agreement that gave the shareholder control of the stock for one year was so obligated. The shareholders exercised that control, voted the stock and elected, by the stock majority they possessed, officers and directors. The Supreme Court, reviewing many early authorities, held that there was an implied contract to pay arising from the facts and the shareholder was estopped to deny ownership as to the shares in question. The following language from that

opinion illustrates the rule and reasoning adopted by the court (l. c. 119–120) :

"If after the course of conduct pursued by them, defendants can, in the face of the fact of voting as stockholders, now successfully assert their non-liability as such, it must be confessed that the doctrine of stockholdership by reason of implied contract and by reason of estoppel as announced in the foregoing authorities, is shorn of whatever vigor it heretofore has been thought to possess. To deny in such circumstances defendants' liability would be to declare the unpalatable doctrine, a doctrine peculiarly unpalatable in American courts, that a person may play fast and loose; may enjoy all the benefits and emoluments of stockholdership without shouldering a tithe of its usually inseparable burdens; may accomplish by an indirection what could not be accomplished directly; may, in a word, be a stockholder to *vote* but not a stockholder to *pay*. The bare statement of such a doctrine condemns it, and its perniciously unjust results justify the condemnation."

■ Nor is there in this case any question of a "transfer" of this stock to the plaintiff under the portion of the statute that exempts a "transferee" without notice. The parties have stipulated that this stock was "issued" to plaintiff and her deceased husband. "Persons to whom stock is issued cannot correctly be deemed 'transferees'." Wilson v. Cherokee Drift Mining Co., 14 Cal.2d 56, 92 P.2d 802, 803 (1939).

There is, likewise, authority in other states and in the Federal courts holding a wife liable for the deceased husband's liability upon stock issued in joint names. In Fors v. Thoman, et ux., 267 Mich. 148, 255 N.W. 297 (1934), the court dealt with a factual situation very similar to the instant case. There, the husband caused a certificate owned by him to be surrendered and the stock reissued in the names of the husband and his wife. The husband died and, thereafter, under receivership proceedings, suit was filed to enforce statutory liability of the stockholders for the unpaid portion of their stock. It was conceded that she had no knowledge that her name was placed on the certificate and that she paid no consideration to her husband. The court, nonetheless, found her liable upon the basis of her having received dividends on the stock. The court points out in its reasoning that there may be an element of contract when one becomes a stockholder, but that the liability for an assessment is based upon the provisions of the statute and cited from 3 Ruling Case Law, page 402, as follows:

"Where the statute in general terms imposes upon the stockholders of a bank liability for its debts, a married woman who owns stock in a bank is not exempt on account of coverture from such liability. She incurs liability by virtue of the statute as owner of the stock and not by contract . . . " 267 Mich. at 152, 255 N.W. at 298.

The court went on to cite from Keyser v. Hitz, 133 U.S. 138, 149, 10 S.Ct. 290, 33 L.Ed. 531 (1890), which held a married woman liable for stock issued in her name without her knowledge upon a showing that she received dividends on the stock. The Michigan court cited with approval the Supreme Court: "If she endorsed them, or either of them, she is estopped to say that she did not know their contents, and was not the owner of the shares of stock upon which the dividends were declared; . . ." It is difficult to distinguish the fact situation here from that disclosed in the Michigan and Supreme Court cases, for here it is stipulated that the plaintiff received a stock dividend of 250 shares of stock, and no valid distinction exists between the receipt of a cash dividend or a stock dividend. In the language of Justice Swayne in Sanger v. Upton, 91 U.S. 56, 64, 23 L.Ed. 220 (1875) quoted with approval by Judge Sherwood in Griswold v. Seligman, supra, 72 Mo. at 117: "She was estopped from denying her own-

ership. She could not assert her title if there was a profit and deny it if there was a loss." It follows that the judgment of the trial court was erroneous in failing to offset against the plaintiff's claim the unpaid subscription price for the stock. The cause is accordingly reversed with directions to enter judgment in favor of the plaintiff in the amount of $852.50.

All concur.