# The State of Missouri

AT THE

## OCTOBER TERM, 1881.

(*Continued from Volume* 74.)

| 75 | 13. |
|----|-----|
| 98a | ²636 |

### FISHER, *Appellant*, v. SELIGMAN.

1. **Corporation**: STOCKHOLDER'S LIABILITY. To sustain a claim of a right by contract to vote stock in a corporation without incurring the obligations of a stockholder, it must appear that at the time the stock was voted there was a contract in force authorizing the holder to vote it. Hence, where a corporation deposited its own unpaid and unsubscribed stock with a banking firm as security for advances to the corporation, to be held by the firm for the period of one year, but with no provision for voting the stock, and after the lapse of the year the firm did vote it and thereby elected their own board of

directors and so ultimately obtained complete control of the corporation; *Held*, that they had thereby brought themselves within the rule of liability laid down in *Griswold v. Seligman*, 72 Mo. 110.

2. ——— : ——— : ESTOPPEL. One who would be estopped to deny, as against a corporation, that he is a stockholder thereof, will also be held estopped as against a judgment creditor of the corporation.

3. ——— : ———. No person will be regarded as holding stock as a "trustee" or by way of "collateral security," within the meaning of section 9, Wagner's Statutes, page 301, and, therefore, exempt from liability as a stockholder, unless it has come into his possession by original subscription as trustee for some person other than the corporation, or by derivative title as trustee, or by way of collateral security after it has already been issued by the corporation in the ordinary course of business.

4. ——— : ———. Courts will be sedulous in their endeavors to defeat all schemes and contrivances whereby parties may seek to receive and enjoy the benefits and privileges incident to the position of a stockholder and at the same time to be exonerated from the burdens imposed by law.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This was a proceeding by motion under the statute by Fisher, claiming as a judgment creditor of the Memphis, Carthage & Northwestern Railroad Company, an insolvent corporation, for execution against Joseph Seligman, an alleged stockholder of the corporation. The circuit court ordered execution to issue, and from this judgment Seligman appealed to the St. Louis court of appeals, which reversed the judgment and remanded the cause. From this latter judgment Fisher appealed to this court.

The evidence given on the trial showed the following state of facts: On the 15th day of May, 1874, plaintiff obtained judgment for $2,450 against the railroad company on an indebtedness which accrued January 21st, 1874. The company was then and ever afterward continued to be insolvent. It was organized under the general railroad law with a capital stock of $10,000,000. Joseph Seligman was a member of the firm of J. & W. Seligman & Co.,

bankers of New York. On the 14th day of March, 1872, this firm enteied into a contract with the railroad company, which, after reciting that the road had been graded, bridged and tied, and the right of way obtained for twenty-seven miles, appointed Seligman & Co. financial agents for the negotiation of the first mortgage thirty-year bonds of the company, with a stipulation on their part to make certain advances of cash to be used in completing the road; in consideration of which the company agreed to deposit with them for sale its entire issue—5,000,000—of bonds, and also a majority of the capital stock which it was authorized to issue, the stock to remain in their control for one year at least. It was further stipulated that in the event that by some cause unforeseen Seligman & Co. should not succeed in the negotiation of said bonds, or any part of them, within twelve months, the railroad company should repay all sums of money advanced with interest, and in addition thereto a commission of two and a half per cent on all bonds returned by Seligman & Co.

To carry out this agreement, a deed of trust was executed on May 1st, 1872, to Jesse Seligman and one Stewart, as trustees, conveying the road and all its property and franchises, to secure bonds to the amount of $1,900,000. This deed provided that in case of default of interest the property conveyed should be surrendered to the trustees on demand. A certificate of stock, dated May 28th, 1872, issued to J. & W. Seligman for 60,000 shares in the Memphis, Carthage & Northwestern Railroad Company of $100 each, was produced on the trial from the possession of Seligman; as to which he testified that this stock was not paid for, or subscribed for, but issued as paid-up stock, in order that his firm might control the management of the company and the election of officers. This certificate was issued in accordance with a resolution of the board of directors ordering that, in making negotiations with the Seligmans, certificates for a majority of the stock be issued to them, to hold in trust for a period of twelve months.

It was admitted that only $800,000 worth of bonds were issued, of which the Seligmans, having made large advances on the bonds, became owners to the amount of $400,000. Then, in 1873, at a meeting of the Seligmans and other bondholders in New York, at which Judge Baker was present, it was agreed that Baker should become a director and president, with a view to protecting the bondholders. A proxy was accordingly made out by the Seligmans and handed to Baker, which proxy was voted by Mr. Blow for the Seligmans at the annual election in March, 1874, at which election Baker named the ticket, Seligman being named as one of the directors and Baker as another. The ticket was elected ; Judge Baker then became president. Baker testified that the Seligmans knew, in a general way, of these acts, and that from the time of his connection with the road to the foreclosure of the mortgage, the road was controlled by the 6,000,000 of stock issued to the Seligmans. During the ten months that Judge Baker was president of the road, he did not apply its earnings to the payment of interest. The newly elected directors held only one meeting, which was held in October, 1874, under the presidency of Judge Baker; at which meeting they did only one thing, that is, they turned over the road to the trustees in the mortgage for non-payment of interest. The stock book of the road, which contained merely the list of stockholders, without the number of shares, showed the names of J. & W. Seligman as stockholders. The transfer book has the following entry:

| NAME. | RESIDENCE. | DATE. |
|---|---|---|
| J. & W. Seligman. | New York, N. Y. | May 29th, 1872. |

| NO. OF SHARES. | | AMOUNT IN DOLLARS. |
|---|---|---|
| 60,000. Sixty Thousand. | | 6,000,000. Six Million. |

(Held in Escrow

These books were kept in obedience to the requirements of the corporation law of the State. Wag. Stat., 300, § 8.

*Joseph Shippen* for appellant.

This ·case is governed by the case of *Griswold v. Seligman*, 72 Mo. 110, and the numerous authorities therein ·cited. Defendants became and were stockholders in said railroad company, and in all respects liable as such, despite their secret agreements. Thompson on Stockholders, §§ 124, 129 ; *Kansas City Hotel Co. v. Harris*, 51 Mo. 464 ; *Kansas City Hotel Co. v. Hunt*, 57 Mo. 126 ; *Burke v. Smith*, 16 Wall. 390 ; *Sawyer v. Hoag*, 17 Wall. 610 ; *Upton v. Tribilcock*, 91 U. S. 45 ; *Sanger v. Upton*, 91 U. S. 56 ; *Webster v. Upton*, 91 U. S. 67 ; *In re Empire City Bank*, 18 N. Y. 199 ; *Hatch v. Dana*, 101 U. S. 205 ; *County of Morgan v. Allen*, 103 U. S. 498. Defendants' conduct and acts estop them from making the defenses herein attempted. (1) By accepting and holding said absolute and unconditional certificate. Thompson on Stockholders, §§ 105, 161, 171 ; *Upton v. Tribilcock*, 91 U. S. 48 ; *Upton v. Englehart*, 3 Dill. 49ɔ ; *Pickering v. Templeton*, 2 Mo. App. 424 ; *Van ·Cott v. Van Brunt*, 2 Ab. New Cas. 283. (2) By voting said 60,-·000 shares of stock. Thompson on Stockholders, § 160 ; 1 Wag. Stat., sub. 5, § 6, p. 300 ; *In re Reciprocity Bank*, 22 N. Y. 17 ; *Eaton v. Aspinwall*, 19 N. Y. 119 ; *Upton v. Tribilcock*, 91 U. S. 48. (3) By electing himself a director, and accepting and holding such position. 1 Wag. Stat., p. 299, § 6. Section 771, Revised Statutes 1879, has no application to this case. Thompson on Stockholders, § 224 ; *Stover v. Flack*, 30 N. Y. 70 ; *Johnston v. Laflin*, 6 Cent. L. J. 133 ; *Pullman v. Upton*, 96 U. S. 328 ; *National Bank v. Case*, 99 U. S. 628 ; *Brewster v. Hartley*, 37 Cal. 15 ; *Wheelock v. Kost*, 77 Ill. 296 ; *Hale v. Walker*, 31 Iowa 344 ; *s. c.*, 7 Am. Rep. 137 ; *Adderly v. Storm*, 6 Hill (N. Y.) 624 ; *Holyoke Bank v. Burnham*, 11 Cush. 183 ; *In re Empire City Bank*, 18 N. Y. 199 ; *Rosevelt v. Brown*, 11 N. Y. 148 ; *Newry R'y Co· v. Moss*, 14 Beav. 64.

*John P. Ellis* for appellant.

The control of a corporation can never be legally surrendered to its creditors, secured or unsecured. Where one, whether creditor or not, contracts with a corporation for its control through the use of a majority of its stock, receives the stock with the intention of using it for that purpose, afterward so uses it, and thereby acquires full corporate control, he has deliberately done that which can be done only by a stockholder. Having bargained for, used and enjoyed the privileges of a stockholder, he ought to be held to a stockholder's liability. One who holds, uses and votes stock for his own benefit, holds the stock *cum onere*, and to the extent of his interest is individually liable to the creditors of the corporation whose stock he so uses. *Maguire's case*, 3 DeG. & Sm. 31; *Bunn's case*, 2 DeG. F. & J. 295; *St. Charles Man'f'g Co. v. Britton*, 2 Mo. App. 290; *Webster v. Upton*, 1 Otto 68; *Sawyer v. Upton*, 1 Otto 56; *Upton v. Tribilcock*, 1 Otto 45; *Re Bachman*, 12 B. R. 223; *Sagory v. Dubois*, 3 Sandf. Ch. 466; *Sawyer v. Hoag*, 17 Wall. 610; *Wheelock v. Kost*, 77 Ill. 296; *Pullman v. Upton*, 6 Otto 328; *Am. R'y Frog Co. v. Haven*, 101 Mass. 398; *Farrar v. Walker*, 3 Dill. 506; *Schaeffer v. Mo. Home Ins. Co.*, 46 Mo. 248; *Adderly v. Storm*, 6 Hill 624; *Smith v. Heidecker*, 39 Mo. 157. It may be true that defendant could not have compelled the railroad company to permit him to vote his stock. But the company waived objection, accepted the defendant as a legal stockholder, and gave him full control of the corporation. Under these circumstances the defendant cannot be heard, even against the corporation, to dispute his conduct as a stockholder, much less against a creditor. *Holyoke B'k v. Goodman Paper Man'f'g Co.*, 9 Cush. 576; *Kansas City Hotel Co. v. Hunt*, 57 Mo. 126; *Kansas City Hotel Co. v. Harris*, 51 Mo. 464; *Barrett v. Schuyler Co.*, 44 Mo. 197; *Piscataqua Ferry Co. v. Jones*, 39 N. H. 491. The acceptance and holding of a certificate

of shares in an incorporation makes the holder liable to the responsibility of a shareholder. In this case, in addition, the name of defendant's firm appeared in the list of stockholders required to be kept by the statute. 1 Wag. Stat., p. 300, § 6; *McLaughlin v. Detroit R. R. Co.*, 8 Mich. 100; *Holbrook v. N. J. Zinc Co.*, 57 N. Y. 616; *Pullman v. Upton*, 6 Otto 328; *Upton v. Tribilcock*, 1 Otto 47, 48; *Rosevelt v. Brown*, 1 Kernan 151; *Holyoke Bank v. Burnham*, 11 Cush. 183; *Johnson v. Somerville Dyeing, etc., Co.*, 15 Gray 219; *Hoagland v. Bell*, 36 Barb. 57; *R. & W. Turnpike Co. v. Van Ness*, 2 Cranch C. C. 449; *Trumbull v. Payson*, 5 Otto 418. The actual delivery of stock cuts out the defense that it was in escrow. *Wight v. Shelby R. R. Co.*, 16 B. Mon. 4. A false entry upon the corporate books, in respect to the ownership of stock, will not avail the real owner as a defense against creditors. *Castleman v. Holmes*, 4 J. J. Marsh 1; *Roman v. Fry*, 5 J. J. Marsh, 634; *Sanger v. Upton*, 1 Otto 60; *Chaffin v. Cummings*, 37 Me. 76; *Harvey v. Kay*, 9 B. & C. 356; *Adderly v. Storm*, 6 Hill 624; *Schaeffer v. Ins. Co.*, 46 Mo. 248; *Thorp v. Woodhull*, 1 Sandf. Ch. 411; *Corwith v. Culver*, 69 Ill. 502; *Ruggles v. Brock*, 6 Hun (N. Y.) 164.

Section 9, page 301, 1 Wagner's Statutes, being section 771 Revised Statutes 1879, is by its terms applicable only to cases where some one other than the corporation remains liable to the creditors. So in case of collateral security, " the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder;" and in case of a trust, "the estate and funds in the hands of such    *    *    trustee shall be liable." It is absurd to attribute the intention to the legislature of making the corporation liable as a stockholder, for it cannot be its own stockholder. *American R'y Frog Co. v. Haven*, 101 Mass. 398; *s. c.*, 3 Am. Rep. 377; *Dayton & Cin. R. R. Co. v. Hatch*, 1 Disney 84; *State v. Smith*, 48 Vt. 266; *Ex parte Holmes*, 5 Cow. 426; *Brewster v. Hartley*, 37 Cal. 15; *Wheelock v. Kost*, 77 Ill 296; *Pullman v. Upton*, 6

Otto 328; *Johnston v. Laflin*, 103 U. S. 800. Moreover, this stock was never pledged as collateral security; no rights of pledge were vested in the pledgee; no power of sale or other disposition. The deposit of stock was, in the answer, " to enable the defendant to control the organization of the corporation and the election of its officers." It is impossible to conceive of the control of a corporation being held as collateral security, and to understand how the stock, which accomplishes this control, has no owner or holder. The protection of the creditor is the paramount object the legislature had in view, and the act ought to receive such construction as will best accomplish this purpose. *Hager v. Cleveland*, 36 Md. 491. Outside the operation of this statute, the law is well settled that the ostensible owner of stock is liable to the creditors, notwithstanding he may in fact have held only in trust, or as collateral security. *Pullman v. Upton*, 6 Otto 328; *Holyoke Bank v. Burnham*, 11 Cush. 181; *Albert v. Savings Bank*, 1 Md. Ch. 407; *Matter of Empire City Bank*, 18 N. Y. 210; *Brewster v. Sime*, 42 Cal. 139. But supposing section 9 does apply to the case at bar, and the Seligmans, as trustees or pledgees, are not liable, still they were trustees or pledgees for themselves to the amount of at least $400,000, to which extent they are expressly charged by the statute with the payment of corporation debts.

*Harding & Buller* and *R. E. Rombauer* for respondent.

There never was a contract between defendant and the corporation making defendant a stockholder. *Brewster v. Hartley*, 37 Cal. 15; *Seymour v. Sturgess*, 26 N. Y. 134, 145 ; *Pittsburgh & S. R. R. Co. v. Gazzam*, 32 Pa. St. 340. And defendant can show *aliunde* the stock certificate, and even the books of the corporation, under what circumstances the certificate was issued to J. & W. Seligman & Co. *McMahon v. Macy*, 51 N. Y. 155, 161; *Tonica, etc., R. R. Co. v. Stein*, 21 Ill. 96, 98 ; *Lathrop v. Kneeland*, 46 Barb.

432, 438; *Jones v. Portsmouth R. R. Co.*, 32 N. H. 544; *Pittsburgh, etc., R. R. Co. v. Stewart*, 41 Pa. St. 54. Defendant is not estopped from asserting that he is and was not a stockholder, no act of his having induced plaintiff to alter, injuriously to himself, his previous condition. Bigelow on Estoppel, p. 473, 560; *Welland Canal Co. v. Hathaway*, 8 Wend. 480; *Howard v. Hudson*, 2 El. & B. 1; *Kinney v. Farnsworth*, 17 Conn. 355; *Cummings v. Webster*, 43 Me. 192; *Heath v. Derry Bank*, 44 N. H. 174; *Brown v. Wheeler*, 17 Conn. 345. The proceeding is statutory and in derogation of the common law. The plaintiff must establish that defendant is liable under the statute, which he has failed to do. 1 Wag. Stat., p. 301, § 9; *McMahon v. Macy*, 51 N. Y. 155, 161; *Skouten v. Wood*, 57 Mo. 382.

*Broadhead, Slayback & Hauessler* also for respondent.

It requires the assent of the corporation before an individual can become a member of it, and this generally must be done either by subscription to the stock of the corporation, or by a transfer to him on its books, and with its consent. In no other way can an individual become a member of the body corporate, and it is only as such a member of the body corporate that our statute intends that he should be held liable for the debts of the corporation. It is true that a man may so act in regard to third persons, as to be estopped from denying that he is a member of the corporation, and liable as such, but in that case he must have so acted as to cause third persons to incur liabilities, or sustain losses, upon the idea that he is a member.

## I.

SHERWOOD, C. J.—In the case of *Griswold v. Seligman*, 72 Mo. 110, the legal points involved in the present record were fully discussed, and the rulings there made are decisive of the case before us. Inasmuch, however, as those

points have been re-argued in this instance, we have thought best to say somewhat more concerning them.

It was conceded in argument, by counsel for defendants, that if a party without any contract therefor, assumes the attitude and privileges of a stockholder; assuming unwarrantably the exercise of such privileges; assumes to vote as a stockholder, that thereby he will take upon himself all the burdens and liabilities incident to such a position. But the contention is made that here there was a written contract entered into between the corporation and J. & W. Seligman & Co., of which firm Joseph Seligman was a member. The record shows there was indeed a contract entered into as contended, but of what avail is such a contract, when it contained no provision that the members of the firm should acquire the rights of stockholders? Is it not manifest that this being so, the case must stand as if no such contract had been entered into? We cannot regard the matter in any other light. In a word, it is but the assertion of a truism to say that a contract which does not confer a right, cannot be relied on to support or uphold the exercise of such right; cannot be looked upon, so far as concerns that particular right, as any contract at all. The case stands here then on this point precisely as did the *Griswold case*; that of a party who votes as a stockholder, and, when the endeavor is made to fasten upon him the customary liability arising from such conduct, attempts to shelter himself under a contract giving him the alleged right to vote as a stockholder; but which contract when examined, is bare and barren of any such provision. But even if the contract gave such a right, a right to vote the stock, that contract expired by its own terms and limitation, in one year from the reception of the stock, May 29th, 1873, so that in any event, the voting of the stock, occurring as it did, after Seligman ceased to have any right to hold the stock as trustee, such voting was wholly unauthorized, and must, therefore, be attended by those consequences to which we have heretofore adverted.

## II.

As to Joseph Seligman being estopped from denying that he is a stockholder, we hold, as we did before, that he is thus estopped. The fact that Seligman did not hold himself out to the world as a stockholder; the fact that Fisher, the creditor, at the time he gave credit, was not aware of Seligman's liability, is a matter altogether immaterial. If Seligman so conducted himself toward the corporation as to preclude himself from denying as to the corporation, that he was a stockholder, by the same steps he estopped himself as toward any creditor, who, under our law, succeeds and is subrogated to the corporate rights and assets. And there is nothing novel in this application of the doctrine of estoppel. Subrogated as the creditors are, to the rights of the insolvent corporation, among those rights will be included those acquired by reason of estoppel as well as those acquired in the ordinary way. The authorities cited in the *Griswold case* fully sustain and illustrate this. Nothing is more common in the law of estoppel than that a party estopped as toward a particular person, is likewise estopped against all claiming under or in privity with such person. In instances like the present, the creditor claims under, represents and stands in the shoes of the corporation, and doing this, is entitled to advantage himself to the same extent as could the corporation. According to the authorities cited on a former occasion, already referred to, had Seligman been sued for calls, it would not have lain in his mouth after assuming to act as a stockholder, to resist such action by denying what he had before by his conduct asserted.

## III.

Nor are our views changed as to the effect of section 9, Wagner's Statutes, page 301. "No person holding stock in any such company as executor, administrator, guardian or trustee, and no person holding such stock as collateral

security, shall be personally subject to any liability as a stockholder of such company; but the person pledging such stock shall be considered as holding the same and shall be liable as a stockholder accordingly, and the estates and funds in the hands of such executor, administrator, guardian or trustee shall be liable, in like manner and to the same extent as the testator or intestate, of the ward or person interested in such fund would have been if he had been living and competent to act, and held the stock in his own name." Joseph Seligman cannot be regarded as holding the stock in the capacity of "trustee," nor as holding it as "collateral security," within the meaning of that section. This section, according to the plain import of its terms, relates to stock already issued in ordinary course of business, and which subsequently comes into the hands of either a trustee of some person laboring under a disability, as *ex. gr., a femme covert,* or into the hands of the administrator of the estate of some decedent, or into the hands of a guardian of some infant; or, lastly, into the hands of a pledgee as " collateral security." In the last instance the " person pledging such stock shall be considered as holding the same and liable as a stockholder accordingly." This person is the pledgeor, and is " personally subject to    *    * liability as a stockholder of such company."

It is not pretended here that there is any person who pledged this stock—that any person is liable thereon ; and so it is not possible that the statute in question should apply. In every case of pledging stock, within the meaning of the statute, there must be a stockholder whom the law, notwithstanding he has pledged his stock, still considers as occupying his original attitude and responsibilities, and, therefore, looks to him and holds him individually answerable. The bare statement of this case shows no such individual pledgeor; no person against whom the creditor, if remediless in consequence of the insolvency of the corporation, could seek redress. He might recover judgment; he might have an execution issued; that writ be returned

*nulla bona*, but when he had gone to such legal extremity, he would, if a certain theory is to prevail, find that though stock in abundance had been issued, that though it had been pledged, that no one was responsible on that stock· either as pledgeor or as stockholder.

But enough on this point. Take another instance mentioned in this section and the view becomes no better for Seligman. He is a "trustee," it is said, but who is his *cestui que trust?* What "estates and funds in the hands of such    *    *    trustee," are there, which can be made "liable in like manner and to the same extent as the    *     *    person interested in such fund would have been if    *    *    competent to act and hold the stock in his own name?" Is it not plain that the statute, when speaking of the "estates and funds" of the person bene-ficially interested, does not and cannot refer either to the corporation or to the assets and funds thereof? If it does not thus refer, then this of itself must conspicuously show both that there were no "estates and funds" in the hands of the alleged trustee, and that of consequence, he is not the sort of fiduciary whom the section exempts from lia-bility.

That section treats of· two and only two kinds of lia-bility; one personal, that imposed on the pledgeor of stock; the other, that imposed on the estates and funds of him· "who, if    *    *    competent to act," would have "held the stock in his own name." This record presents neither kind of liability, and as it does not, there are no circumstances upon which section 9 can operate. This being the case, that doctrine is properly invoked here, which declares that a person who assumes the anomalous· attitude of a trustee, when representing no *cestui que trust*, becomes personally liable. This principle finds apt illustra-tion in *Johnston v. Laflin*, 5 Dill. 65. Britton bought stock with the bank's funds and.had it registered in the books as held by "Britton, trustee for the bank;" and because there was no *cestui que trust* who could become liable, the

liability incurred was fastened on the party who unwarrantably assumed to act as a fiduciary.

## IV.

There have been many devices, many schemes, many cunningly devised transactions whereby men have sought to receive every benefit and yet shirk every burden incident to the position of a stockholder, but such devices have generally come to naught. The courts have been sedulous in their endeavors to bring about such a result. We have no doubt that the matters set forth in this record are of the nature indicated, and we cannot better illustrate our views than by quoting the language of the learned judge of the court of appeals: "A method of issuing bonds and selling no stock, but issuing paid up stock, on which nothing has ever been paid, to the bond-holder, who is to vote the stock, and, when called by a creditor, to say that though nothing has ever been paid on the stock, and no one is liable upon it; that his voting was illegal though it gave him control of the road; and that he merely held the stock as collateral though it represented no indebtedness of anybody, no property, and nothing but a right to vote—would seem to be an ingenious evasion of the law." So say we, and, therefore, reverse the judgment of the court of appeals and affirm that of the circuit court. HOUGH and RAY, JJ., concur; HENRY, J., as heretofore; NORTON, J., dissents.

### Dissenting Opinion.

NORTON, J.—This case, so far as the questions in it are concerned, is on all fours with the case of *Griswold v. Seligman*, 72 Mo. 110. For the reasons given in my dissenting opinion in that case, which it is not necessary here to repeat, I do not agree to the opinion and judgment rendered in this case.