In re CARPENTER.

(District Court, N. D. New York. December 2. 1903.)

1. BANKRUPTCY—CONDITIONAL PURCHASE OF GOODS FOR RESALE—VALIDITY AS AGAINST TRUSTEE.

Goods purchased to be resold in due course of business cannot be claimed by the seller, as against the trustee of the bankrupt purchaser, where sold under a secret, unrecorded agreement that title should not pass till payment was completed.

2. SAME—CREATION OF AGENCY—CONSTRUCTION OF CONTRACT.

A buggy dealer obtained goods to be resold, under an agreement directing them to be shipped "at prices herein specified, and for which we agree to give our note on receipt of invoice, payable as per terms stated. * * * Terms 4 Mos. May 1st. Less 5% for cash in 30 days." The agreement provided that "all goods on hand and the proceeds of sale of all goods received under this contract, whether the goods are in cash, notes or book accounts, we, as agents of 'the seller,' agree to hold the same in trust for the benefit of and subject to the order of 'the seller' until we have paid in full, in cash, all our obligations of whatsover nature now due or yet to become due to" the seller. Also, that "the sale and disposition of all goods received under this contract * * * shall be made and the proceeds held by us as agents of" the seller. *Held* not to create an agency, and that the seller could not claim title to the goods as a principal, against the trustee of the bankrupt purchaser.

3. SAME—MORTGAGE BY BANKRUPT.

Under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], vesting in a trustee in bankruptcy title to property transferred in fraud of creditors, an agreement by which title to goods sold to be put into the purchaser's common stock and resold in the due course of his business, and title to the proceeds of such resales are to remain in the seller until all the purchaser's obligations, existing and future, are met, is invalid as a mortgage against such trustee.

4. SAME—RIGHTS OF TRUSTEE.

A trustee in bankruptcy may take advantage of the invalidity of an agreement fraudulent as to the creditors of the bankrupt, the same as a judgment creditor might.

Petition for the review of an order made by a referee in bankruptcy adjudging the title of certain personal property claimed by the Columbus Buggy Company to be in the trustee of the bankrupt.

¶ 4. See Bankruptcy, vol. 6, Cent. Dig. §§ 273, 421.

Henry W. Smith, for trustee.
Dyer & Teneyck, for Columbus Buggy Co.

RAY, District Judge. Inasmuch as the Columbus Buggy Company asserts that this was a special reference to the referee to ascertain and report the facts to the court for its decision, with no power to make an order as to the title, this court will so treat the matter, and decide the question of title on the undisputed evidence, without reference to the decision of the referee. The notes of trial say, "Special reference to report question of title of certain property," etc.

For some time prior to the bankruptcy of Beecher E. Carpenter he had received carriages from the Columbus Buggy Company on written orders given to him. The following is a copy of one, omitting description of goods:

"Order.

"Salesman Nelson                                                 2/22  1901
    "Columbus Buggy Co.,
        "Columbus, Ohio.
"On or about April 1st, 1901, please ship the following goods to B. E. Carpenter, Troy, N. Y., at prices herein specified, and for which we agree to give our note on receipt of invoice, payable as per terms stated below.
    "57–R–O. This order not subject to countermand. All orders filled with steel tires unless otherwise specified.

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

    "Terms: 4 Mos. May 1st. Less 5% for cash in 30 days.
"All goods on hand and the proceeds of all sales of all goods received under this contract, whether the goods are in cash, notes, or book accounts, we, as agents of the Columbus Buggy Co., agree to hold the same in trust for the benefit of, and subject to the order of Columbus Buggy Co., until we have paid in full, in cash, all our obligations of whatsoever nature now due, or yet to become due to the said Columbus Buggy Co. And the sale and disposition of all goods received under this contract it is hereby mutually agreed shall be made, and the proceeds thereof held by us, as the agents of said Columbus Buggy Co. The title to and ownership of all goods received or shipped under this contract shall remain vested in Columbus Buggy Co., but nothing in this clause to release us from making settlement and payment of our obligations as herein provided.
"We accept the same terms on all further orders we may send during the year.
"No agreement or understanding with agents will be recognized unless noted in the order.
"The conditions of guarantee published in your Catalogue are hereby recognized as binding with reference to the order. (Subject to approval of home office.)
                                        "[Sign]        B. E. Carpenter,
"Approved ——————.              [Town]        Troy, N. Y."

The others were like this in substance, except in date and description of goods and prices. As the goods were delivered, notes were given by Carpenter for the price or value thereof. Some of these notes were paid when due, and some were paid after renewal. At the date of the filing of the petition in bankruptcy herein, Carpenter had on hand six buggies received at different times, so ordered, of the value of $689.50, and the Columbus Buggy Company held his unpaid notes to the amount of $2,300. At the time he ordered these vehicles Carpenter was running a business where he sold goods of this description, and all these goods to the knowledge

of the Columbus Buggy Company were purchased by Carpenter to be sold by him in his business as a general dealer. The claim is that the title to these buggies never passed to Carpenter, or that, if it did, the company, under these orders or agreements, has a preferred lien thereon for the amount of its claim, which is largely in excess of their value, and that the company is entitled to take the property. It is also asserted that Carpenter held this property in trust as agent for the company, and was not a vendee in possession, and had no title whatever thereto. All of these claims are made by the company and disputed by the trustee in bankruptcy.

It is plain that the company cannot maintain its claim of title on the theory of a conditional sale; that is, that the property was sold and delivered to Carpenter with a precedent condition that title should be retained by the company until the buggies were paid for. In re Garcewich, 115 Fed. 87, 53 C. C. A. 510, 8 Am. Bankr. R. 149; In re Howland (D. C.) 109 Fed. 869, 6 Am. Bankr. R. 495; In re McCallum (D. C.) 113 Fed. 393. These goods were purchased, if purchased, to be resold in due course of business; and hence In re Kellogg (D. C.) 112 Fed. 52, 7 Am. Bankr. R. 270, has no application whatever. There the molders were purchased to be kept and used by the vendee. Such was the case in Earle v. Robinson, 91 Hun, 363, 36 N. Y. Supp. 178, affirmed 157 N. Y. 683, 51 N. E. 1090. Were these goods delivered by the company to Carpenter as agent for the company, to be sold by him as such agent, and received and held by him as such agent for such purpose? This court knows of no law that will prevent the owner of personal property delivering it to a duly constituted agent to be sold by him for the principal, or for his benefit, the agent holding the proceeds of a sale as such until paid over. In such a case the unsold goods and the proceeds of all sales made, if identified, would belong to the principal. But there is not a scintilla of evidence in this case, aside from what we read in the "Order," that Carpenter ever acted or agreed to act as agent for this company. What was done by the parties negatives the idea of an agency. For the goods shipped Carpenter is to give his note or notes. Carpenter holds the goods, or the proceeds of such as he has disposed of, until he has paid his "obligations of whatsoever nature now due or yet to become due to the said Columbus Buggy Company." This is consistent with the existence of the relation of vendor and vendee, but absolutely inconsistent with the existence of the relation of principal and agent. Clearly, the obligations referred to are the notes given for the purchase price of the buggies, some due and others not due, and not the liability to pay over money received as agent for the company. Nor is it consistent with the theory of the existence of an agency that the alleged agent, Carpenter, should give his note for the value of the buggies sent him. In the order of February 22, 1901, we find the "terms" are "4 Mos. May 1st. Less 5% for cash in 30 days." Are these the "terms" on which Carpenter is authorized to sell, or are they the terms on which Carpenter purchases the goods? Clearly the latter. Again, not a word is said to the effect that Carpenter is agent in receiving or selling the goods. Indeed, the fair infer-

125 F.—53

ence is that the goods are not received by Carpenter as agent for the company, or sold by him as such. The language is, "All goods on hand, and the proceeds of all sales of goods received under this contract, we as agents," etc. It seems plain that this is an attempt, by mere words inserted in the order, to create a lien in favor of the vendor in case of default in payment by the vendee; an attempt to transform the vendee into an agent for the holding of unsold goods and the proceeds of sales, in case of default of payment, for the mere purpose of giving security to the vendor. This does not create the relation of principal and agent, nor, as against creditors in bankruptcy proceedings, can the ownership of the vendee be transferred to the vendor for such a purpose in such a manner. "In order to create an agency, there must be an appointment of the agent by the principal and an acceptance of such appointment. This follows the fact that agency is one form of contract, and must possess the essential elements of every contract." 1 Am. & Eng. Enc. of Law (2d Ed.) 948. "The agency is to be established or disproved by the facts taken as a whole, and elements apparently characterizing the transaction as of a different nature must often be disregarded when the general intention to create an agency appears. The converse of this is true; and, if such general intention does not appear, the relation will not be created, although there exist some elements of agency." Id. 950. In this case it is apparent that there was no purpose to create an agency, except a mere executory agreement to create a so-called agency to transform the ownership of the debtor, the alleged agent, into an ownership by the creditors, the alleged principal, in case of default in payment of the debt owing for the goods sold.

Nor is the instrument valid as a mortgage. It is presumably fraudulent, and therefore void, because the vendee, alleged mortgagor, was at liberty to sell in the usual course of business. The goods went into his common stock, and were to pass to purchasers of the vendee in due course of business. If it was the purpose to create an agency, and intrust the goods to the agent, Carpenter, for sale, as such, why was not such an agreement made in plain and unambiguous terms? If Carpenter was to sell for the benefit of the company, why this large indebtedness, showing Carpenter had been allowed to retain the proceeds of sales for his own benefit? Why this absence of an accounting? The conclusion is irresistible that it was the purpose of the Columbus Buggy Company to give Carpenter apparent ownership—a false and delusive credit on the strength of his possession and apparent ownership. The lien attempted to be created extends not simply to the goods sold at a certain date under a specific order, but purports to extend to goods paid for, money and notes received for goods already paid for, and to after-acquired property and money and notes received therefor. It is a sort of an omnibus contract or agreement, so drawn as to be capable of any sort of a construction the Columbus Buggy Company might desire to have put upon it to suit the exigencies of the case or the circumstances as they might arise. It was secret, unfiled, and unrecorded. As against the creditors of this bankrupt, it is void both as a conditional sale and as a mortgage or an instrument

attempting to create a lien in behalf of the Columbus Buggy Company.

. It is claimed by the company that all presumption of fraud has been overcome. But the court finds no evidence or facts to warrant any such holding or conclusion. It is apparent that Carpenter was to sell for his own benefit, inasmuch as he was only to hold the proceeds until his obligations—notes—were paid, and there is no suggestion he was to make sales for the company. The following cases are more or less in point: Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; Chemung Canal Bank v. Payne, 22 App. Div. 353, 47 N. Y. Supp. 877; Quinn Brewing Co. v. Hart, 48 Hun, 393, 1 N. Y. Supp. 388; Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755; Southard v. Benner, 72 N. Y. 424. See, also, opinion in In re Garcewich, 115 Fed. 87, 53 C. C. A. 510, 8 Am. Bankr. R. 151, 152: The trustee in bankruptcy may take advantage of the invalidity of this instrument the same as a judgment creditor. It is not such a case as In re N. Y. Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133. As a mortgage it is void as against all creditors, because made in fraud of creditors. Section 70 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) says that; not because of omission to file or refile.

The court holds as matter of fact and conclusion of law that the trustee in bankruptcy of Beecher E. Carpenter has title to the buggies in question, and is entitled to the possession of same, and that as against him and the creditors of the bankrupt the said Columbus Buggy Company has no lien thereon. An order to that effect will be entered.