PONTIAC BUGGY CO. v. SKINNER.

(District Court, N. D. New York. January 30, 1908.)

1. SALES—CONDITIONAL SALES—RESERVATION OF LIEN—"COLLATERAL SECURITY."

A contract for the sale of buggies provided that all goods on hand and the proceeds of all sales of goods shipped under the contract, and on all subsequent orders, whether the proceeds are in notes, cash, or book accounts, should be held as "collateral security" by the buyer, in trust and for the benefit of and subject to the order of the seller, until all obligations of the buyer arising under the contract had been paid in cash. All goods on hand were to be kept insured by the buyer for the seller's benefit, so far as its interest might appear, and a failure to do so, in case of fire, obligated the buyer to assume all liability or loss, and that the title to all goods so shipped should remain in the seller until the price was paid, and until all notes given were paid in cash. The seller however contemplated that the buyer might make sales of the goods on its own terms, with power to give an absolute title in due course of business, and without any liability to account to the seller for the proceeds of such sales, except to hold such proceeds and the goods remaining as its own property in trust or as "collateral security" for the unpaid portion of the price due to the seller. *Held*, that such contract was not a valid conditional

sale, but an attempt to reserve a lien to secure payment of the price of the goods, the title to which vested at once in the buyer on delivery. Citing 2 Words & Phrases, 1252, 1253.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1324–1326.]

2. SAME—VALIDITY OF CONTRACT—FRAUD.

If a seller parts with the possession to the buyer, and invests the latter with the right to sell as his own, and treat the proceeds as his own, the sale is absolute, and the title is in the buyer absolutely, as fraud is presumed even if there be an agreement that title to the property shall remain in the seller until the debt is paid; but if the agreement be that the buyer may sell, and if he does so shall pay over the proceeds to the seller to apply on the debt, then there is no fraud, and the seller retains the title.

3. BANKRUPTCY—LIENS—FILING.

Where an unfiled contract of sale reserves a lien on the property unsold in the hands of the buyer, and on the proceeds of the property sold as security for the unpaid portion of the price, such lien is void, as against the buyer's estate in bankruptcy, for nonfiling of the contract.

4. CHATTEL MORTGAGES—PROPERTY TO BE MANUFACTURED—FILING.

Where a contract for the sale of buggies to be manufactured attempted to reserve a lien on the buggies unsold in the hands of the buyer and on the proceeds of those sold, it was immaterial that the buggies were not in existence when the contract was made; the seller being required to file the contract when the buggies were delivered thereunder, if he desired to create a lien thereby.

5. BANKRUPTCY—LIENS—VALIDITY.

Under Bankr. Act, July 1, 1898, c. 541, § 67, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], providing that claims which, for want of record or for other reasons, would not have been valid liens against the claims of the creditors of the bankrupt shall not be liens against his estate, an alleged lien attempted to be reserved by a seller of personal property to the bankrupt to secure payment of the price was invalid, where the bankrupt was entitled to sell the property for its own benefit.

In Bankruptcy. Application by the Pontiac Buggy Company for an order directing the receiver of the Camden Wagon & Sleigh Company, bankrupt, to deliver certain buggies in his possession and which were in the possession of the bankrupt when the petition was filed, receiver appointed, etc.

Lewis, Watkins & Titus, for petitioner.
Coville & Moore, for respondent.

RAY, District Judge. The petitioner, Pontiac Buggy Company, is a corporation of the state of Michigan. The Camden Wagon & Sleigh Company, a New York company, did business at Camden in the state of New York and November 8, 1907, a petition in bankruptcy was filed against it, and it has been adjudicated a bankrupt accordingly. The petitioner was engaged in manufacturing and selling buggies, etc., and the bankrupt was engaged in selling buggies and other things. This was known to the Pontiac Company. Zenas E. Britton was the sales agent of the petitioner in the state of New York, and on the 8th day of July, 1907, he solicited and took from the now bankrupt company a written order, the material parts of which read as follows:

"Vehicle Contract and Order.

"Pontiac Buggy Company, Pontiac, Michigan.

"Dated at Camden, N. Y. 7-8, 1907.

"Gentlemen: Please enter for shipment to Camden Wagon and Sleigh Co. on or about Sept. 1, the following order, subject to the terms and conditions of this contract and at the prices named, and under your catalog warrantee. Terms, payable 3 months from date of sale until Dec. 1st or 5 per cent. for cash 30 days from date of sale until Dec. 1st for which we will give our notes upon receipt of invoice or when requested, in settlement, with privilege of discounting at time agreed upon, drawn with exchange on New York or Chicago, and interest at highest legal rate after maturity. All goods not sold Dec. 1st date bill April 1st, 1908."

Then follows description and quantity of goods with "List price per Job" in last column. Then—

"Less freight, same deducted from invoice.

"Agreed Conditions.

"The above prices and terms apply to all accepted orders whether by mail or otherwise during the season ending Sept. 1st next. All goods delivered f. o. b. cars at Pontiac, Mich. * * * The title to and ownership of all goods shipped under this contract shall remain vested in the Pontiac Buggy Co. until the price thereof shall have been paid in cash and until all notes given under this contract are paid in cash, but nothing in this clause shall be considered a release from making settlements and payments as provided elsewhere in this contract. Notes taken by the Pontiac Buggy Co. in settlement are not accepted as payment, but only as evidence of indebtedness. All goods on hand and proceeds of all sales of goods shipped under this contract, on this order and on all subsequent orders, whether the proceeds are in notes, cash or book accounts, shall be held as collateral security, in trust and for the benefit of, and subject to the order of the Pontiac Buggy Co., until all obligations arising under this contract to the Pontiac Buggy Co. shall have been paid in cash. In case of death or financial embarrassment of the firm, or any member or individual making this contract, all accounts or notes for goods shipped under this contract shall become immediately due and payable. All goods on hand under this contract are to be kept insured by the maker of this contract for the protection and benefit of the Pontiac Buggy Co., so far as their interests may appear. Failing to keep insured in case of fire loss, he (maker) assumes all liability or loss. This order is accepted subject to unavoidable delays, such as fire, strikes, blockades or any other cause beyond control of the Pontiac Buggy Co., and they will not be held liable for any damages that may arise from such causes.

"Transportation companies shall be looked to for all losses occasioned by rubbing, chafing, or other damages which may occur to goods in transit, or the failure to deliver any goods shipped when receipted for in good condition. All claims for shortages must be made within five days from receipt of goods. No agreements, conditions or stipulations, verbal or otherwise, save those mentioned herein, shall be recognized. This order is not subject to cancellation except at the option of the Pontiac Buggy Co. and, payment of 10% of amount of same as liquidated damages.

"This and all other orders during the term above mentioned accepted subject to the approval of the Pontiac Buggy Co."

Same was duly signed by the Camden Company and by Britton, the sales agent of the Pontiac Company, in duplicate, and one was delivered to such agent who forwarded same to the Pontiac Company, which company received it on the morning of July 10, 1907, and on the morning of July 11th the Pontiac Buggy Company wrote the Camden Wagon & Sleigh Company accepting and approving the order as follows:

"Camden Wagon & Sleigh Co., Camden, N. Y.                    July 11/07.

"Gentlemen: We acknowledge your order sent in by our Mr. Britton for a car load of vehicles for shipment on or about Sept. 1st. Although it is a little irregular for us to accept an order at this season of the year that continues into next season, inasmuch as we have not heretofore done business with you we will accept the terms. and are mailing you under separate cover our catalogue and Eastern price list, and hope to merit your business in the future.

"Truly yours,                                   Pontiac Buggy Co."

The other order duly signed was retained by the Camden Company. None of the buggies or runabouts described in the order were manufactured or on hand in stock at the time, but were manufactured thereafter by said Pontiac Company to fill the order, and were shipped August 30, 1907, and received a few days later by the now bankrupt company. The total number ordered, made, and delivered was 20, and the "List price per Job" amounted to $762. Five of the vehicles were unpacked and sold, 6 were unpacked and exhibited for sale, and the remaining 9 were unpacked when the petition in bankruptcy was filed. Hence 15 are in the hands of the receiver. No payment was made on account of these vehicles or any of them. The Pontiac Company has duly demanded all the vehicles unsold, and delivery or surrender has been refused. As the facts are undisputed no question is raised as to the power and jurisdiction of this court to determine the title to the property unsold. This order was never filed as a chattel mortgage or otherwise. The question is where was the title to the property when the petition was filed? Was this a sale and delivery of the property with an attempt to create a lien thereon and on the proceeds, or was it a delivery thereof to the Camden Company to be sold by it for the Pontiac Company, and remit the proceeds less a commission or profit, or was it a conditional sale, title to revert on certain conditions? Was this a conditional sale or in law a sale absolute?

It is conceded that the sale to the Camden Wagon & Sleigh Company was to enable that company in turn to sell the property to its customers in due course of business, and give full and complete title thereto. No agency was created or attempted to be created. The Camden Company could sell at will at any price and on any terms it saw fit, and give absolute title. It was expected that it would. This applies to all the property mentioned in the order, not to the part sold by the Camden Company alone. It was not a sale of the property to the Camden Company with the understanding or agreement that it was to hold or use the same. But it is expressly stipulated, "All goods on hand and proceeds of all sales of goods shipped under this contract, on this order and on all subsequent orders, whether the proceeds are in notes, cash, or book accounts, shall be held as collateral security, in trust and for the benefit of and subject to the order of the Pontiac Buggy Company, until all obligations arising under this contract to the Pontiac Buggy Co. shall have been paid in cash." This was not an agreement that the proceeds of sales made by the Camden Company were to take the place of the property and be remitted to or handed over to the Pontiac Company, but rather, a recognition of the fact that the Camden Company was the owner thereof, and would hold them for the Pontiac Company as collateral security for the debt of the Camden Company to the Pon-

tiac Company. Then comes the provision that in case of death or financial embarrassment, etc., the whole account for the property shall become immediately due and payable. Also, the Camden Company is to keep the property insured in its own name for the benefit of the Pontiac Company as its interest may appear. These clauses are quite inconsistent with the claim that title remained in the Pontiac Company.

In Re Garcewich, 115 Fed. 87–89, 53 C. C. A. 510, 512, the Circuit Court of Appeals, Second Circuit, stated the law of conditional sales very clearly and forcibly as follows:

"It is the settled law of this state that personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title by express agreement remain in the vendor until the payment of the purchase price. In such a case the payment is strictly a condition precedent, and until the performance the title does not vest in the buyer. It is one of the exceptional cases in which the law tolerates the separation of the apparent from the real ownership of chattels when the honesty of the transaction is made to appear. But when the purpose for which the possession of the property is delivered is inconsistent with the continued ownership of the vendor, the transaction will be presumed fraudulent as against purchasers and creditors.

"The transaction will be deemed merely colorable, and the title to have been vested absolutely in the buyer. Ludden v. Hazen, 31 Barb. (N. Y.) 650; Frank v. Batten, 49 Hun, 91, 1 N. Y. Supp. 705; Bonesteel v. Flack, 41 Barb. (N. Y.) 435. When the property is delivered to the vendee for consumption or sale, or to be dealt with in any way inconsistent with the ownership of the seller, or so as to destroy his lien or right of property, the transaction cannot be upheld as a conditional sale, and is a fraud upon the creditors of the vendee. Even in the case of a chattel mortgage, when it is understood between the mortgagor and the mortgagee that the mortgagor may sell the chattels in his business, and use the proceeds, the transaction is fraudulent in law as against the creditors of the mortgagor. Such an arrangement, if expressed in the instrument, defeats its essential nature and qualities as a mortgage, so that, in a legal sense, it is not a security, but merely the expression of a confidence by the mortgagee in the mortgagor; and, if made, but not expressed in the instrument, is equally vicious, if not more suggestive of a fraudulent purpose."

Is this the law as to conditional sales?

In Re Carpenter (D. C.) 125 Fed. 831, 833, this court followed In re Garcewich, supra, in a case where the order for goods was quite similar to the one under consideration here, and pointed out the distinction sharply drawn between that line of cases where the title to property sold is to pass when paid for only, and in the meantime the property is to be retained and used by the vendee, or, is sold, the proceeds are to take or stand in its place and be passed over to the vendor in payment or as his own, and that other line of cases where the sale is in terms conditional—that is, it is provided that the title shall remain in the vendor until the property is paid for, but, still, the vendee is given full power to use up, consume, or sell and give good title and take or hold the proceeds as his own. Earle v. Robinson, 91 Hun, 363, 36 N. Y. Supp. 178, affirmed 157 N. Y. 683, 51 N. E. 1090; In re Kellogg (D. C.) 112 Fed. 52, 7 Am. Bankr. Rep. 270; Prentiss Tool & Supply Co. v. Schirmer, 136 N. Y. 305, 32 N. E. 849, 32 Am. St. Rep. 737; and Cole v. Mann, 62 N. Y. 1; and Ballard v. Burgett, 40 N. Y. 314—are illustrations of the first class of cases, while In re Garcewich, supra; In re Carpenter, supra; Lud-

den v. Hazen, 31 Barb. (N. Y.) 650; Frank v. Batten, 49 Hun, 91, 1 N. Y. Supp. 705; Bonesteel v. Flock, 41 Barb. (N. Y.) 435—are illustrations of the latter. Brackett v. Harvey, 91 N. Y. 214, a mortgage case, illustrates both. If the vendor parts with the possession to the vendee and invests him with the right to sell as his own and treat the proceeds as his own then the sale is absolute, and the title is in the vendee absolutely, as fraud is presumed even if there be an agreement that title to the property shall remain in the vendor until the debt is paid. But if the agreement be that the vendee may sell, and that if he does he shall pay over the proceeds to the vendor to apply on the debt, then there is no fraud, and the vendor has the title. If a mortgage permits the mortgagor to sell and use the proceeds as his own the transaction is presumed fraudulent, and the mortgage is void. If the mortgage permits the mortgagor to sell and stipulates that the proceeds shall apply on the mortgage debt the mortgage is valid. The normal and proper purpose in both cases is that the proceeds shall be applied in extinguishment of the debt. See Brackett v. Harvey, 91 N. Y. 221.

The single question in this case is as to the proper construction of this order or contract. It was a sale in form and in effect to the Camden Company. It was agreed that the vendee might sell again, not as agent, thus treating the property as its own. Was it agreed in substance and effect that the proceeds of such sales should be the money or property of the Pontiac Buggy Company, and held and passed over to it in extinguishment of the debt? It is stipulated, simply, that the property unsold and the proceeds of that sold are to be held by the vendee as collateral security for the vendor. The vendor is not to have possession of the collateral, even. It is to be held by the vendee in trust for the benefit of and subject to the order of the vendor, but it is not expressed anywhere that it is to be turned over to the vendor as its property or held as its property. It is expressly contemplated that the vendee, in selling, may take notes from its vendees, or have the indebtedness from its vendees represented by book account merely. The parties do not agree that these are to take the place of the property sold, or that the Pontiac Company will accept them in payment for the property. In defining and designating the property unsold by the Camden Company, and the proceeds of that sold by it as "collateral security" to the Pontiac Company for the debt owing to it for the property and all other property subsequently ordered, the parties have inserted a provision inconsistent with the idea of retention of ownership of the property or proceeds by the Pontiac Company. It implies that the ownership is in the Camden Company and not in the Pontiac Company. See vol. 2, Words and Phrases Judicially Defined, 1252, 1253; In re Wadell-Entz Co., 67 Conn. 324, 35 Atl. 257, 258; Fisher v. Seligman, 75 Mo. 13, 24; Munn v. McDonald (Pa.) 10 Watts, 270, 273; McCormick v. Falls City Bank, 57 Fed. 107, 110, 6 C. C. A. 683.

In Re Wadell-Entz Co., supra, it is said:

" 'Collateral security' necessarily implies the transfer to the creditor of an interest in some property, or lien on property, or obligation, which furnishes a security in addition to the responsibility of the debtor. The law regulating

this subject rests on the assumption of such transfer to the creditor of property in some form, on which property he relies for security, and which he is entitled to apply, instead of resorting to the debtor's own property, towards the satisfaction of his debt, by virtue of a contract, implied or express, as the case may be, but collateral to the contract of indebtedness. A debtor's additional promises to pay cannot, from the very nature of the case, be treated as collateral security for his debt, unless such additional promises are themselves secured by a lien on property, or by the obligations of third persons."

In Fisher v. Seligman, supra, it is held:

"No person will be regarded as holding stock as a trustee or by way of 'collateral security,' within the meaning of section 9, Wagner's St. p. 301, c. 37, art. 2, and therefore exempt from liability as a stockholder, unless it has come into his possession by original subscription as trustee for some person other than the corporation, or by derivative title as trustee, or by way of collateral security after it has already been issued by the corporation in the ordinary course of business."

In Munn v. McDonald, supra, it is said:

"The use of the term 'collateral security,' when a debtor transfers to his creditor an article of value or the evidence of a debt, is intended to express that it is not received in payment of the principal debt, and that it is not an additional right to which the creditor is absolutely entitled. It is merely a concurrent security for another debt, subsidiary to the principal debt, and, if the principal debt be paid off, the debtor is entitled to a restoration of the collateral security."

Turning out, putting up, pledging, or giving collateral security necessarily implies that the debtor has given to the creditor some property or promise, either that of the debtor or of some third person, as additional security to the main debt, obligation, or promise, and to which collateral the creditor may resort. Moffatt v. Corning, 14 Colo. 104, 24 Pac. 7, 13. It is there said:

"Collateral, 'in its common use, means additional, subsidiary security given to secure the principal obligation. It is a separate obligation. Such "collateral security" stands by the side of the principal promise as an additional or cumulative means for securing the payment of the debt. The etymology of "collateral" security indicates that it is something running along with, and, as it were, parallel to, something else of a similar character. It is collateral to the original indebtedness.'"

I cannot conceive that a debtor has given his creditor "collateral security" when the debtor agrees merely to hold the property and proceeds of the property of the creditor which belong to such creditor. It seems to me the fair interpretation and meaning of the contract in question is that the Pontiac Company sells the property to the Camden Company on credit, with the understanding that the Camden Company is to sell as owner and give absolute title in due course of business; that the Camden Company becomes indebted to the Pontiac Company for the amount of the purchase price fixed by the agreement and which is to be paid at a future day with a discount if paid sooner; that in a certain event the whole purchase price becomes immediately due and payable. Then, as security to the Pontiac Company, it is agreed that title shall remain as security—that is, a lien is given or attempted to be given by way of a conditional sale back to the Pontiac Company, the condition being that, if the Camden Company does not pay, the Pontiac Company may treat the unsold property as

its own, and take possession. This is but a chattel mortgage. Then, as further security to the Pontiac Company, the Camden Company gives its promise that it will hold the money, notes, etc., received by it for the property sold in trust for the benefit of the Pontiac Company as collateral security to that company for the debt—that is, it agrees to hold its own property, including that part purchased of the Pontiac Company and remaining unsold, for the benefit of the Pontiac Company and as a collateral security for its own debt to that company. It is a mere agreement to pledge its own property as security to the Pontiac Company for a debt it owes in præsenti, and may or may not owe in the future.

I think it was the design and purpose of the Pontiac Buggy Company to part with title; that it fully understood it was doing so; that it intended to create a debt from the Camden Wagon & Sleigh Company to it for the purchase price; that it intended to create or obtain a lien on the property unsold and on the proceeds of that sold by the Camden Company as collateral security for the unpaid purchase price. I do not think the Pontiac Company retained title to any part of the property. As a security or lien the agreement is void as to the bankrupt estate, because not filed. It is immaterial that the property was not in existence when the contract was made when the order was given and accepted. It was in existence September 1, 1907, and was then delivered. Then the agreement should have been filed, if it was intended to create a lien thereby. But if intended as a mortgage, etc., as it was evidently an agreement for a lien, it was void as to all creditors, and as to the trustee and receiver so far as the vehicles unsold are concerned, for the reason that the Camden Wagon & Sleigh Company had the right to sell the same as its own, and treat same and the proceeds as its own. In such case the inference of fraud is irresistible, and conclusively presumed in the absence of proof to the contrary. This is the common law. See, also, Robinson v. Elliott, 22 Wall. (U. S.) 523, 526, 22 L. Ed. 758, cited and approved, Brackett v. Harvey, 91 N. Y. 221; In re Garcewich, 115 Fed. 87–89, 53 C. C. A. 510. See, also, cases cited in 6 Am. Encyc. L. p. 483; Barbour v. Perry, 41 Ill. App. 613.

It is immaterial that the Camden Company agreed to pledge the proceeds as collateral security for the debt or hold them as such. The proceeds were to become and did become the property of that company, and it could have disposed of them giving good title. Had it done so it would have violated its agreement or contract; true, but in so doing it would not have misappropriated or misapplied any of the property of the Pontiac Buggy Company. This contract put these vehicles into the possession of the Camden Company with the right to sell in its own name and take notes, etc., payable to itself, in fact with every appearance of absolute ownership, and with an agreement that the company should hold the proceeds as its own, but as collateral to the debt owing by it to the Pontiac Company. Evidently the purpose was to vest the Camden Company with every evidence of title, to give it, in effect at least, a false and delusive credit, and, such being the facts, within the decisions of the Supreme Court of the United States, the Circuit Court

158 F.—55

of Appeals in this Circuit, and the Court of Appeals of the state of New York, the title was in the Camden Company, the limitations and conditions were void as to all the creditors of that company and as to the receiver and trustee in bankruptcy. This is true whether we consider the contract one of conditional sale merely, or as a mortgage. I think the trend of the well-considered cases is to regard it as a mortgage merely. Brown v. Dewey, 2 Barb. (N. Y.) 28; Matthews v. Sheehan, 69 N. Y. 585; Conway v. Alexander, 7 Cranch (U. S.) 218, 3 L. Ed. 321; Pioneer Gold M. Co. v. Baker (C. C.) 23 Fed. 258; Hughes v. Sheaff, 19 Iowa, 335; Wheeland v. Swartz, 1 Yeates (Pa.) 579; 1 Jones on Mortgages, § 258. See 6 Am. & Eng. Encyc. Law, 443, where it is said:

"The inclination of the courts in doubtful cases is to construe the transaction as a mortgage rather than as a conditional sale, on the ground that an error which converts a conditional sale into a mortgage is less harmful than one which changes a mortgage into a conditional sale."

It is conceded that the decisions on the question of the validity of such a contract and its effect are not uniform. In New York, as in other states, statutes have been enacted, approved, and then repealed, requiring all contracts for conditional sales, when the vendee was given possession of the property, to be filed or recorded. But there is no statute that does away with the presumption of fraud when the conditional sale is accompanied by an absolute delivery of the property with the right in the vendee to sell all, treat the proceeds as his own, even if he does agree that the unsold property and proceeds of that sold shall stand as collateral security for the purchase price.

It is clear that the Camden Company under the contract could have sold these vehicles and given clear title, and that had any creditor of the Camden Wagon & Sleigh Company obtained a judgment against it, such creditor could have issued execution, caused a levy on and sale of these vehicles to be made, and that such sale would have carried the entire title, and such levy would have created a lien superior to any claim of the Pontiac Company. Section 70 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], in most explicit terms declares that:

"The trustee, etc. * * * shall * * * be vested by operation of law with the title of the bankrupt * * * to all * * * property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

Hence, as the bankrupt company had a title which it could transfer, that title is in the receiver for him to protect, and it is the entire title. If it is subject to any lien, that will remain and will be protected, but clearly it does not exist under this contract, for the two reasons given. Section 67 of the bankruptcy act provides:

"Claims which for want of record, or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

This alleged lien, if one be claimed, is void for the reason the Camden Company had the right of sale for its own benefit as stated. This case is directly within and controlled by In re Garcewich, 115 Fed.

87, 89, 90, 53 C. C. A. 510. This case is also within and controlled by Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885. This case, reversing 105 App. Div. 617, 93 N. Y. Supp. 460, not only holds (affirming Thompson v. Van Vechten, 27 N. Y. 568) that a chattel mortgage and conditional contract of sale, intended as security, are void if not filed within a reasonable time after execution and delivery (see pages 86 and 89 of 185 N. Y., pages 791, 792 of 77 N. E. [113 Am. St. Rep. 885]), but also that an agreement whereby the mortgagor may sell the mortgaged property makes the mortgage void unless it provides that the proceeds of such sale be paid over to the mortgagee. The case also holds expressly, notwithstanding the decision of the Circuit Court of Appeals in Re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, that creditors of the bankrupt who have not obtained judgment are entitled to the benefit of nonfiling, and that the trustee in bankruptcy may take advantage of such nonfiling for their benefit, inasmuch as section 67 of the bankruptcy act provides that "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." The court points out that this provision was not in the prior act of 1868, under which Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, was decided. The court also points out the error of the Circuit Court of Appeals in the Economical Printing Co. Case above referred to, and says:

"The case in the Circuit Court of Appeals is in point, and it was there held that a trustee in bankruptcy could not attack a chattel mortgage for default in filing. As appears by the opinion, the result was reached on the assumption that by the law of the state of New York a nonfiled chattel mortgage was void only as to judgment creditors obtaining a lien, not as to general creditors. We think the very eminent judge who wrote in the case misconceived the law of the state in this respect. If it were a federal question we would follow the decision regardless of our own opinion, but as the question is as to the law of this state, we must adhere to the prior decisions of this court."

On the subject of the invalidity of conditional contracts of sale and mortgages intended as security where permission is given the mortgagor to sell the mortgaged property, the Court of Appeals at page 90 of 185 N. Y., page 793 of 77 N. E. (113 Am. St. Rep. 885), says:

"A chattel mortgage otherwise valid is not rendered void because it professes to include property that may be subsequently acquired. Gardner v. McEwen, 19 N. Y. 123. Nor does permission given the mortgagor to sell the mortgaged chattels, the proceeds thereof to be applied in payment of the mortgage, render the mortgage void, because in such case the proceeds of the sales must be treated as reducing the amount due on the mortgage, even though the mortgagor should misapply them or refuse to pay them to the mortgagee. Conkling v. Shelley, 28 N. Y. 360, 84 Am. Dec. 348. But an agreement between the parties by which the mortgagor was to carry on a retail store, making purchases from time to time and selling off in the ordinary manner, the mortgagee all the time retaining a lien on the whole stock by way of mortgage under which he could, upon default, take possession of the remaining goods and sell them for the payment of his debt, was held void as against creditors. Edgell v. Hart, 9 N. Y. 213, 59 Am. Dec. 532. This last case may be somewhat limited by the subsequent decision in Brackett v. Harvey, 91 N. Y. 214, but nevertheless it is unquestionably the law that where there is an agreement that the mortgagor may sell for his own benefit the mortgage is fraudulent as a matter of law. Southard v. Benner, 72 N. Y. 424; Potts v. Hart, 99 N. Y. 168,

1 N. E. 605; Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137,. 11 Am. St. Rep. 691; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678."

The conclusion is inevitable that these vehicles in question here belong to the estate in bankruptcy—of the Camden Wagon & Sleigh Company—and there will be an order to that effect reciting findings of fact and conclusions of law in accordance with this opinion.  Application denied.